## No. 12,607.

### WILLIAM G. VINCENT VS. BENJAMIN FRELICH.

One of the buildings leased (not both) was rendered temporarily uninhabitable by the fire. To restore the building temporarily uninhabitable, repairs were necessary, and not reconstruction.

The building could have been put in condition for use in seventeen days. The defendants after the fire remained in possession more than that number of

days. Those who held the premises under the defendants and for their bene-
fit, objected to the work of repairing, and prevented the possibility of repair-
ing the building within the time stated.

While the lessor ought to make, during the continuance of the lease, all the repairs
which may accidentally become necessary, the tenant should not interpose
obstacles to the work of repairing.

Partial destruction remediable by repairs and which do not require reconstruc-
tion, will not give good grounds to dissolve the lease.

The judgment of those who are skilled in matter of building and the repair of
building as to what constitutes reconstruction, and what constitutes repairs of
a building, is entitled to great weight.

Where the lessee has property to store immediately after a fire the offer to him
by the lessor of a store room as an accommodation is not ground to rescind;
nor does it necessarily manifest a desire to put an end to the lease. The annul-
ment of leases is not favored, where the lessor is not at fault. 21 An. 23; 6
An. 379.

Where lessees abandon the premises, the lessor may, for the purpose of minimiz-
ing the loss, offer " to let " the property. Such acts will not cancel the lease.
6 An. 74.

The petition and the document annexed are construed together, and error in the
petition as to interest was amended by reference to the contract of lease
annexed. 15 L. 116; 5 An. 575.

APPEAL from the Civil District Court for the Parish of Orleans.
Monroe, J.

*E. Evariste Moise* for Plaintiff, Appellee.

*F. L. Richardson* (*Rogers & Dodds* of Counsel) for Defendant,
Appellant.

Argued and submitted December 4, 1897.
Opinion handed down January 24, 1898.
Rehearing refused April 4, 1898.

The opinion of the court was delivered by

BREAUX, J. This was an action for rental.

The lease was entered into for five years, beginning May, 1893.

The rental was one hundred and fifty dollars a month. Two four-
story brick stores, Nos. 226 and 228 Decatur, of this city, was the
property leased. They were connected by open arches in the
dividing wall; one could step or move goods from one building
to the other; they were fitted up for defendant's plant.

A fire on September 5, 1896, damaged one of the buildings leased, also the plant of the lessees. They were manufacturers of jeans clothing, and the buildings had been fitted up for the particular business in which the defendants were engaged.

Immediately after the fire, the tenants surrendered possession to the insurance companies in which they were insured, for adjustment of the loss and settlement. They held possession until the 23d of September, and during their possession they refused to permit the builder employed by the landlord to enter the building to work thereon as he had contracted. After the insurance adjuster had completed the adjustment of the loss of the tenants, the latter resumed their possession, and retained it a few days.

The contract of lease between the plaintiff and defendant contains the usual clauses of leases, save the following, which was also inserted in the contract: " Should the property be destroyed by fire, or should the lessee be deprived of the use of said premises by *some* other unfortunate event, not due to any fault or neglect on their part, then the lessee shall be entitled to a credit for the unexpired time of the lease;" and the following: " No repairs shall be due to the lessee except such as may be needed to the roof or floor, or rendered necessary by fire or other casualty, not occasioned by the lessees fault or negligence."

Returning to the matter of the extent of the injury done to the building, the testimony shows that one of the roofs, that on building 228, was destroyed by the fire, and part of the building; a detail *statement* given shows that the injury (in addition to the destruction of the roof) was to the upper floors, stairway and water-closets which were in the building 228.

The building adjoining, 226, was not as badly damaged. The builder, by whom the injury, after the fire, was carefully examined, to whose testimony much weight is given by all parties to the suit, testified that the defendants could have continued the operations of their plant after the damage, had they chosen so to do, until the end of his contract.

The plaintiff immediately after the fire offered another building to the defendants to store away their property, until the repairs were made. He also after they had refused to continue their lease placed a notice " to let " on the buildings.

It also appeared that the defendants desired to lessen the extent

of their business; that they became the lessees of a seventy-five dollars a month one-building place, instead of plaintiff's one hundred and fifty dollars a month two-building place; that defendants did not make the least inquiry of the builder, who was anxiously awaiting to begin the work of repairing. It is also in evidence that such was the condition of defendant's factory after the fire that it would not have been possible for them to resume operations in twice the number of days needed for the repair of the buildings.

These are the prominent facts.

From an adverse judgment the defendants prosecute this appeal.

The damages to the building rendered them, in their unrestored condition, unfit for the purpose for which they were leased. One of the buildings, however, was only in a small degree damaged.

Experienced mechanics, who had carefully examined the leased property, were decidedly of the opinion that the less-damaged building could have been occupied by the tenant while the building badly damaged was being repaired.

The builder and contractor, who had bound himself to make needful repairs on these buildings in seventeen days, testified that he had examined the property thoroughly, to see how much the repairs would cost. That the work required consisted of repairs and not of reconstruction; that the defendants might, while he was at work in one of the buildings, have occupied the other; that such moving is a little inconvenient, but that it is done frequently. The testimony of this witness is corroborated by another builder and contractor. They had the experience rendering them competent to judge the extent of the damage, and the amount it was worth, and the time it would take; they also are presumed to have a practical knowledge of the difference between repairs and reconstruction. Their evidence in a case such as the one before us for determination should evidently have more weight than that of the merchant or manufacturer of clothing, however skilful he may be in his business.

The question involved is more particularly within the domain of the architect than of the jurisconsult. Baudry-Lacantinerie, Vol. 3, p. 409.

The following we translate from Laurent, Vol. 25, p. 121:

"The ordinary carpenter," said Laurent, "would have taught Troplong that his notion of repairs is not correct, and that no one

has ever thought of releasing a lessor from making the repairs he mentions."

From another section of the work of the same commentator we translate: The *facts* in each case almost always give rise to discussion (*Ib.*, par. 41).

From Dalloz we glean: It is for the court as a matter of fact, and not strictly of law, to determine whether it is a matter of " reconstruction " and not of repairs, after having heard a report of expert builders. If the repairs require only a short delay within which it is possible to make them, and the proprietor offers to the tenant another house temporarily, the lessee has no ground of action to dissolve (par. 181, Vol. 30, p. 307).

Here defendant's witness, Richard, corroborated by Mass, were the only witnesses in the case who had practical knowledge of building. They testified that the work consisted of " repairs," and not " reconstruction."

A building, as we understand, is repaired " after it has been damaged;" it is reconstructed after it has been demolished as a whole or in part.

The cost of repairing in the case here was much less than the value of the whole building.

Marcadé, Vol. 6, p. 450, thus expresses his views under similar articles of the Code to ours: When the fire of heaven or any other unforeseen cause of destruction strike a building, three things are possible:

It may be completely destroyed, it may be destroyed in part, or it may be only damaged. Without question every demolishment is a destruction, and if a violent blast of wind causes the fall of a chimney, it might be said that there is a partial destruction of the house, the chimney being destroyed; but this reasoning is not exact, and when, as in the case supposed by M. Troplong, a gust of wind throws down the chimney, tears out the Persian blinds or shatters the windows, or when unusually heavy snow weighs down the roof, it will not be said that for that reason the building is destroyed, even in part, but that it was damaged, and that the work to be done as relates to the whole building will not constitute a reconstruction, even partial, but exclusively a repair.

Damage to a building, different from partial destruction, gives to neither the lessor or the lessee the right to terminate the lease.

The following is in point:

Even in a case important enough to give to the lessee the right of complaining, it may not be sufficiently important to sustain a demand for a dissolution of the lease. The lessee has a right of action to the extent only that he is subjected to a substantial loss; to the extent only that the injury renders the building not fit for the use for which it was leased. Dalloz, Vol. 30, par.

We pass from a brief review of the French authorities to a consideration of the decisions of this court cited by the defendant's counsel:

In Higgins vs. Wilner, 26 An. 544, the facts were not stated at any length in the decision. We had recourse to the record of the case, in the clerk's office, and found that one of the buildings leased had been entirely destroyed by fire, also scaffolding necessary to the tenant's business. New constructions were needed to restore the premises to the condition in which they were prior to the fire. Said the court in that case: "The thing leased was destroyed in part," alluding, as we infer to the building and other property destroyed, as part of all the property leased. Here it is different, no building was entirely destroyed by the flames.

The *dictum* of the court in Penn vs. Kearney, 21 An. 21, can have no weight here. The lease was not canceled and the lessee was held bound despite the vigorous claim set up by him that he had been discharged because of destruction by fire.

It is true that in Meyer vs. Henderson, 49 An. —, the lease was annulled. The facts in that case were that the injury to the building leased by plaintiffs from defendants made it entirely unfit for the purposes for which it was leased. "It was a wreck," said the court, "it was not habitable, it was unfit for the storage of goods and merchandise, and it took months to restore it to what it was."

In Coleman vs. Haight, 14 An. 564, another case cited for defendants, the question related to the rental and the lease involved in the discussion was not annulled. In fact, there was no claim set up for the annulment of the lease.

The facts upon which the case here turns, is that the work consisted of repairs; that the tenants continued in their occupancy after the fire more days than it would have taken to make the repairs; that during their occupancy, hinderances were interposed to prevent lessor from making needful repairs. The continued occupancy by the defendants, as a matter of necessity perhaps, did not render less

prominent the reality that they did remain quite a length of time in the building more than actually required for the removal of their property from the leased premises.

The authorities we have consulted (we have consulted quite a number) are not inclined to countenance the dissolution of a lease when the lessor is not at fault. Dussnau vs. Generis, 6 An. 279; Penn vs. Kearney, 21 An. 23.

We are not impressed by the theory advanced on the part of defendants of abandonment of the lease by the lessor because of the offer made by him to the defendants, of a building to store their property during the time required to make needful repairs. The purpose, as we seize the offer, was to lessen as much as possible the inconvenience to which the tenant had been put by the fire.

With reference to the sign " to let " put up by plaintiff on the front of the building, we do not conclude that it had the meaning and effect contended for by the defendants; the plaintiff testified that his purpose was to minimize the damages—we have no reason to conclude that such was not the case. The plaintiff at all times opposed all indications of ·defendants' intention to leave the prem-ises. In letters to and also in conversation with them, he declared that they should remain; that they had no cause to dissolve the lease. Putting up a sign " to let " was not good ground of itself under the circumstances; had he gone further and leased to new tenants, it would not have destroyed his recourse against his tenant, if the purpose was to allow for the rent collected. Holden vs. Tanner, 6 An. 74.

In the answer·to the appeal the appellant asks that the judgment be amended so as to increase the interest allowed from five to eight per cent. on the principal allowed by the judgment. · We are informed that it was an oversight. The contract of lease stipulating eight per cent. was annexed to the petition and shows the amount due as interest and renders it manifest that there was error as stated in preparing the petition. Similar differences arising from error have been · amended by reference to the document annexed to and forming part of the petition. Brumfield vs. Morty, 15 L. 116; Smith vs. Nash, 5 An. 575.

It is ordered, adjudged and decreed that the judgment appealed from be and it is amended, by increasing the interest allowed from five to eight per cent. As amended the judgment is affirmed at appellee's costs.