On the Merits.
PROVOSTY, J.
[3] In January, 1913, the defendant renewed for 3 years the plaintiff’s lease. Whether on the same terms, the record does not show. It was of a three story brick building fronting 70 feet upon the street and extending 150 to a back alley and divided into a front and a back part by a fire wall situated 100 feet from the front. This front part was used by defendant for carrying on a wholesale fruit and produce business, with a cold-storage compartment; the back part for a candy factory and bottling works, and for the machinery for the cold-storage plant, the candy factory, the bottling works, and the electrical lighting of the building.
On May 23, 1913, this back part was destroyed by fire; with all contents.
On May 26, 3 days after the fire, the city fire marshal notified defendant by letter “that the fire wall is in an unsafe condition and should be torn down at once,” and on the same day the defendant took this letter to Mr. Rose, the president of the plaintiff company, for him to read, and added, according to Mr. Rose, and also according to Mr. Petzer, the vice president of the plaintiff company, who was present on the occasion, that he did so in order that the plaintiff might be advised that the responsibility for any injuries that might result from this dangerous condition would lie with the plaintiff company. The defendant states that he merely warned the plaintiff not to “load anything against the wall.”
On the next day, the 27th, the plaintiff company notified the defendant that the building “being no longer suitable for the purposes for which it was leased,” the lease was at an end.
On the 28th of June the plaintiff began vacating, and ended on July 1, 1913, and then at once brought this suit for a revocation of the lease.
Oiv. Code, art. 2697, provides that if the thing leased is—
“destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease.”
Defendant contends that this article is not to be read as written; that is to say, that *224 it does not give to the lessee the unqualified right to demand a revocation of the lease if the thing leased is destroyed in part, but that it has been interpreted as meaning that the lessee has this right only if the thing leased ceases to be fit for the purposes for which it was leased, and that the further interpretation has been adopted that a thing does not cease to be fit for the purposes for which it was leased if, having been partially destroyed by fire, its former condition may be restored without serious inconvenience to the lessee.
And defendant further contends that by continuing to occupy the premises for a time after the fire, and not vacating at once, the plaintiff must be held to have exercised the option to demand only a diminution of the rent, or, at any rate, to have forfeited the right to demand a revocation of the lease.
In Dussnau v. Generis, 6 La. Ann. 279, where the sidewalk and part of the backyard of the leased premises, in the rear part of the city of New Orleans, were temporarily covered with water from a crevasse that had occurred a few miles above the city, the court refused to revoke the lease, saying:
“There is no express provision in our legislation for a case of this kind;” but “their general spirit and intendment” of our Code on the subject of letting and hiring, “leads to the concho sion that the lawgiver did not contemplate the dissolution of leases, except in extreme cases, but rather an equitable indemnity to the tenant for a temporary inconvenience sustained unexpectedly and without the fault of the lessor.”
In Denman v. Lopez, 12 La. Ann. 823, the lessee sought to revoke the lease because of the dangerous condition of a wall, and the court found that the wall was not in a dangerous condition. The court, however, said,that:
“The provisions of our laws on letting and hiring do not favor the abrogation of leases, when the loss or inconvenience is not caused by the fault of the lessor, but specifies indemnity as the proper remedy except in extreme cases”
—and added that this was the doctrine of Dussnau v. Generis, 6 La. Ann. 279.
In Foucher v. Choppin, 17 La. Ann. 321, the leased premises consisted of a plantation and brickyard, and the military forces took possession of — -
“the vacant or pasture grounds in the rear of the portion occupied by the buildings, brickyard, and garden. _ The effect of this was to “hinder defendant in the use of a private railroad, used for transporting bricks from the brickyard back to the New Orleans & Carrollton Railroad.”
The defendant continued to occupy the leased premises, and, so far as appears, without complaint, during the entire time for which rent was being claimed. The court held he was not entitled to a revocation of the lease, but only to a proportional diminution of rent.
In Penn v. Kearny, 21 La. Ann. 23, the leased premises consisting of several lots with buildings, a shed on one of the lots was destroyed by fire, and the defendant notified the plaintiff that as to this lot he desired to revoke the lease. He did not demand the revocation of the lease as an entirety, but, on the contrary, continued in possession of the other lots and buildings to the end of the lease. The court held that, having “continued in possession of the principal portion of the object of lease,” he was entitled to nothing more than a proportional reduction of rent.
In Murrell v. Jackson & Manson, 33 La. Ann. 1341, the injury to the leased building called only for the reinforcing of one of the walls, and’ the lessor was willing to have this work done. Under these circumstances, the court found that the lessee was not entitled t'o revoke the lease, especially in view of the fact that the injury to the wall had resulted from the improper overloading of it by the lessee.
In Railroad Co. v. Darms, 39 La. Ann. 766, 2 South. 230, the plaintiff enjoined the defendant from establishing a barroom on premises not leased for that purpose. The case bears no analogy to the one at bar.
*226 In Meyer v. Henderson, 49 La. Ann. 1547, 16 South. 729, the court refused to revoke the lease, for the reason that the lessee had, after the fire, subleased the premises in their damaged condition to another, and thereby exercised the option to continue the lease. The observations of the court, arguendo, were not made the basis of the decision, and, besides when taken as a whole, are against the contention of defendant in the case at bar that the lessee may not revoke the lease even though the partial destruction has rendered the thing unfit for the uses for which it was leased.
In the case of Vincent v. Frelich, 50 La. Ann. 378, 23 South. 373, 69 Am. St. Rep. 436, the leased premises consisted 'of two buildings connected by arches in the brick partition wall, and one of the buildings had its roof, upper floors, stairway, and water-closets destroyed by fire. The case turned upon whether the work of restoration would consist of repair or reconstruction, and, if the former, whether the inconvenience to the lessee would he so serious as to justify the revocation of the lease. The court concluded that the work would amount to mere repair, and that the inconvenience to the lessee would not be serious.
In Reynolds v. Egan, 123 La. 314, 48 South. 940, the lessee had continued in possession to the end of the term of the lease.
The learned counsel for defendant cite also Viterbo v. Friedlander, 120 U. S. 707, 7 Sup. Ct. 962, 30 L. Ed. 776. But this case is the main authority relied upon by plaintiff. In it the Supreme Court of the United States enters upon a most interesting comparison between the common and the civil law on the subject of the revocation of leases for causes arising without fault on the part of the lessor subsequently to the contract going into effect, and reviews elaborately the civil law on that point. • It calls attention to the fact that the framers of the Louisiana Code in transplanting article 1722 of the Code Napoleon into the Louisiana Code, as article 2697 of the latter Code, left out the qualifying words “according to circumstancesso that instead 'of reading, as does article 1722 of the Code Napoleon, that the lessee may claim a diminution of rent or a revocation of the lease, according to the circumstances of the case, article 2697 confers this right upon him without qualification.
The omission 'of this qualifying clause can hardly have been accidental. Nor are we much impressed by the suggestion of our learned predecessors in the case of Meyer v. Henderson, 49 La. Ann. 1547, 16 South. 729, supra, that its absence may be considered as supplied by article 2699. The latter article would seem to provide for a different contingency. Be that, however, as it may, we are clear that the defendant in the present case can derive comfort from the cases which we have thus reviewed neither as precedents in their facts, nor because of any dicta there to be found. For if it were conceded that only in an extreme case can the lessee revoke the lease for partial destruction of the thing leased, the present ease would have to be regarded as being of that character, since the partial destruction here is about as extensive as a destruction c'ould well be without ceasing to be merely “partial,” within the legal meaning of that word.
The only difference between the French law and ours on this point, if any, is the one already noticed, namely, that by article 1722 of the Code Napoleon the right of the lessee to revoke the lease in case of partial destruction of the thing leased is qualified, whereas under our article 2697 it would appear to be unqualified, so that our law would appear to be more liberal to the lessee than the French law. Now, according to the prevailing opinion in France, the lessor may put an end to the lease if the injury to the *228 thing leased be so great as to necessitate reconstruction as contradistinguished from mere repairs. See authorities cited by the Chief Justice at page 235 of 109 La., 33 South. 207, in the opinion in the case of Jackson v. Doll. In the present case, therefore, in France the lessor could, at this option, put an end to the lease, and the same right w'ould. be accorded, evidently, to the lessee, since he could hardly be held to a lease by which the lessor was no longer bound. We mention this French interpretation merely by way of argument, and not by way of adopting it, as the point has not heretofore been considered by this court and need not be considered now.
The learned counsel for defendant suggest that the real motive of plaintiff company in seeking this revocation is the desire to move to a more eligible location which it has found near the railroad; and, in pro'of of this, the learned counsel say that on two previous occasions when fires occurred in this same candy factory causing more or less damage, the plaintiff suffered the inconvenience without murmur, although it was during the busy season; whereas the present fire occurred in the dull season, at a time when the plaintiff might, without serious detriment to its business, have abided the delays of reconstruction.
This argument is without force. If the premises have ceased to be fit for the use for which they were leased, and the work of restoration amounts to reconstruction and not t'o mere repairs, the lessee is entitled to revoke the lease; and it can make no difference that the event which justifies the revocation has- come very opportunely and is very welcome.
And, the plaintiff company having promptly notified defendant of its having revoked the lease, we do not think that its having consulted its convenience to some extent in vacating, and delayed a few days or weeks longer than was absolutely necessary for doing so, has changed the legal situation. The continued occupation was by mere sufferance.
Judgment affirmed.