### No. 2382

### Second Circuit Appeal

---

### JOSEPH M. GOLDBERG v. C. L. PORTERIE, ET AL.

---

(June 27, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Landlord and Tenant—Par. 19, 41, 53.**

Where, after a fire, the temporary unfitness of the house due to the fire is of a very minor character, it will not be sufficient to annul the lease under Arts. 2699 and 2700 of the Civil Code.

2. **Louisiana Digest—Landlord and Tenant—Par. 19, 41, 53.**

Art. 2699 of the Civil Code must be read with Art. 2700 of the Civil Code which clearly contemplates that during a lease contract, repairs may become necessary which shall continue for longer than a month which totally or partially deprived the lessee of the use of the premises.

3. **Louisiana Digest—Landlord and Tenant—Par. 19, 41, 53.**

Even though the period of time necessary for repairs to a building damaged by fire is more than five weeks, it will not entitle the lessors to an annullment of

the lease as there was not a partial destruction as contemplated by Art. 2697 of the Civil Code but only a necessity for repairs as covered by Arts. 2700 and 2717 of the Civil Code.

4. **Louisiana Digest—Landlord and Tenant—Par. 19, 41, 53.**

The evidence in this case shows that the damage to a building by fire was merely an injury to the building covered by Arts, 2700 and 2718 of the Civil Code, therefore, Arts. 2696 and 2697 of the Civil Code covering total or partial destruction do not apply.

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. L. L. Hooe, Judge.

This is a suit to collect notes due for rent of leased premises. There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Overton & Hunter, of Alexandria, attorneys for plaintiff, appellee.

Gus A. Voltz, of Alexandria, Porterie & Bordelon, of Marksville, attorneys for defendant, appellant.

CARVER, J. Plaintiff sues C. L. Porterie and W. J. Brouillette for $1,000, besides interest and attorneys' fees, the amount of twenty notes given by rent of three rooms in a brick building in Alexandria in connection with a lease of said rooms, which lease had still twenty months to run but which plaintiff alleges, was broken by abandonment of the premises on the part of the lessee.

Plaintiff also sues Amet Guillot, E. N. Labord and S. DeKnux sureties on a bond given by the lessees to secure performance of the lease contract.

The lessees had, with the consent of the plaintiff, sublet the premises to a Mrs. Posner, whom they called in warranty but who was dismissed on an exception of no cause of action, from the judgment of which defendants do not appeal.

Defendants seek to justify the admitted abandonment on the ground that a fire had partially destroyed the leased premises, necessitating reconstruction thereof and rendering the premises untenantable and unfit for use for a period of forty-five days.

The District Judge gave plaintiff judgment as prayed for, from which judgment defendants appeal.

I.

Defendants cite Civil Code, Article 2699, reading:

"If, without any fault of the lessor, the thing cease to be fit for the purpose for which it was leased, or if the use be much impeded, as if a neighbor, by raising his walls shall intercept the light of a house leased, the lessee may, according to circumstances, obtain the annulment of the lease, but has no claim for indemnity."

And claim that inasmuch as the proof in this case shows that the leased premises for some time after the fire did cease to be fit for the purpose for which it was leased they have the right to annul the lease.

In our opinion the temporary unfitness shown in this case was not sufficient to entitle defendant to an annulment.

The article in question must be taken in connection with Article 2700, which clearly contemplates that during a lease contract repairs may become necessary which shall continue for longer than a month and which may totally or partially deprive the lessee of the use of the leased premises.

That article reads as follows:

"If, during the continuance of the lease, the thing leased should be in want of repairs, and if those repairs cannot be postponed until the expiration of the lease, the tenant must suffer such repairs to be made, whatever be the inconvenience he undergoes thereby, and though he be de-

prived either totally or in part of the use of the thing leased to him during the making of the repairs. But in case such repairs should continue for a longer time than one month, the price of the rent shall be lessened in proportion to the time during which the repairs have continued, and to the parts of the tenement of the use of which the lessee has thereby been deprived.

"And the whole of the rent shall be remitted, if the repairs have been of such nature as to oblige the tenant to leave the house, or the room and to take another house, while that which he had leased was repairing."

In this case the defendants sought to prove that the premises were unfit during a period of between four and five weeks.

The plaintiff and his witnesses testify they were made ready in less than thirty days.

It is not necessary for us to determine the precise length of time during which defendants were deprived by reason of unfitness, of the use of the premises. Were it even longer than five weeks this would not entitle them to an annulment if there was not partial destruction as contemplated by Article 2697 but only necessity for repairs as covered by Article 2700 and Article 2717.

That deprivation of the use of the premises was more or less than a month did not affect the question of annulment but only the question whether the rent should or should not be lessened.

Article 2717 reads as follows:

"The expenses of repairs, which unforeseen events or decay may render necessary, must be supported by the lessor, though such repairs be of the nature of those which are usually done by the lessee."

Defendants did not wait to see how long it would be before the premises could be restored. On July 22, only nine days after the fire, they had their attorney write to plaintiff formally demanding cancellation of the lease and referring to his, the attorney's conversation with plaintiff on the same subject "several days ago".

Defendants admit that they never requested plaintiff to hasten the repairs but stood upon their supposed right of annulment.

We are satisfied that the premises would have been made fit within a much shorter time than was actually consumed if defendants had wished. However, this is not a determining feature.

## II.

Defendants also urge that they have a right to demand annulment under Article 2697, Civil Code, which reads as follows:

"If, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim for damages."

Construing this article with Article 2700 and Article 2717, we think the case turns on the question whether the evidence in this case shows partial destruction and therefore falls under 2696, or only injury, and therefore under Article 2700.

Article 2717 clearly contemplates that unforeseen events may injure the leased premises, thereby necessitating repairs, in which event the lessor must make them.

The imposition on the lessor of the obligation to make repairs necessitated by unforeseen events, implies that the lease is to continue, and is inconsistent with the idea that it either terminates itself or may be terminated at the option of the lessee.

We think, therefore, that if the damage in the instant case is merely an injury, it is not covered by Article 2697, which applies to cases of destruction, the first sentence,

the total destruction, next the partial destruction.

The sublessee had removed one of the partitions thus converting the premises from three rooms to two rooms.

A fire broke out July 13, 1924, in the room adjoining the sublessee's rear room. The heat from the fire scorched and blistered the woodwork of the front room, necessitating scraping and repainting. New electric wiring was necessary for both rooms.

The chief injury was in the back room, the woodwork of which was also scorched and blistered, requiring scraping and repainting. There was some slight damage to the floor of the back room. One window had the glass knocked out and the shutters were knocked or burned off, and the partition wall between this back room and the room where the fire broke out was considerably burned.

The fire burned clear through the wall in places but did not totally destroy it. The evidence is somewhat conflicting as to the amount of injury which this partition wall did suffer and also as to the amount of reparing or reconstruction that had been done on it. The proof convinces us, though, that some of the reconstruction was not necessitated by the fire but by the elimination of a door which had formerly been in this wall but which it was desired to close. The wall was 10 by 18 feet, made of standard construction, that, is 2 by 4 studding placed about two feet on centers, ceiled on both sides. Only two or three new studs were put in. On the side of the wall where the fire originated the destruction was much greater than on the other side.

Hudson, who superintended the repairs to the building, stated that only about fifty-square feet needed replacing on the side

of the sublessee and about one hundred and fifty square feet on the other side. Some of defendants' witnesses testified the receiling on both sides of the wall was more extensive than this, but it is not claimed by any one that the wall was even as much as half destroyed.

It may be difficult in some cases to determine what is destruction, necessitating reconstruction, and what mere injury, merely necessitating repairs. We have no difficulty, however, as apparently was the case with the District Judge, in concluding that the damage in this case was merely injury and not partial destruction covered by Article 2697.

Defendants refer us to Myers vs. Henderson, 49 La. Ann. 1549, 16 South. 729, and Rose vs. Smith, 139 La. 217, 71 South. 487.

In the Myers case, the leased property was a building on Canal street in New Orleans. Concerning the injury, the court says:

"It was a wreck, it was not habitable, it was unfit for the storage of goods and merchandise. The necessary repairs to it required some months for completion."

In the Rose case, the leased property was a three-story brick building fronting 70 feet on a street and extending 150 feet back to an alley; divided into a front part of 100 feet depth and a back part of 60 feet depth. The back part was evidently totally destroyed and the wall between the two parts was left in such an unsafe condition that the Fire Marshall demanded its immediate demolition.

The damage in this case, though, is nothing like as serious as in the Myers or Rose case, nor is it anything like as serious as the injury in the case of Higgins vs. Wilner, 26 La. Ann. 544, about which the court speaks in Vincent vs. Frelich, 50 La. Ann. 378, 23 South. 373.

In the Vincent case, the court says that it referred to the record of the Higgins case and found that one of the buildings leased had been entirely destroyed by the fire together with scaffolding necessary to the tenant's business and that new constructions were necessary to restore the premises to the condition they were in prior to the fire.

In the Myers case and the Higgins case there was clearly partial destruction entitling the lessee to annulment. In the Vincent case, though, the court considered that the injury did not amount to such partial destruction as would entitle the lessee to annulment. The injury in this case, we think, was much less than that in the Vincent case. In that case the leased premises consisted of two four-story brick stores connected by open arches in the dividing wall. The roof on one of these buildings was destroyed and part of the building itself. There was injury also to the upper floors, stairways and water-closets in that building. The adjoining building was also damaged, though the report of the case does not show how much.

The repairs in Bonne case vs. Beer, 37 La. Ann. 531, were, perhaps, more extensive than were necessary in this case. The leased premises were a double four-story brick building. The middle wall was sinking. This wall had been partially cut away on the ground floor and was supported on arches. It was necessary either to build props under the arches or to lighten the weight of the wall resting on same. It was decided to do the latter. Other things necessary were some kind of work, not stated, on the upper portion of the wall, reflooring, galleries on the upper floor and insertion of girders into the wall to support it.

We think the District Judge correctly decided the case and his decision is therefore affirmed.