(127 So. 874)

**BERNSTEIN v. BAUMAN et al.**

No. 2995½.

March 31, 1930.

W. H. Cook and Thatcher, Browne, Porteous & Myers, all of Shreveport, for appellants.

Hunter, Morgan & Hunter and Malcolm W. Feist, all of Shreveport, for appellee.

ROGERS, J.

Plaintiff sued L. J. Bauman, William H. Bauman, and the K. C. S. Drug Company, Inc., in solido, for $9,000, alleged to be due for rentals under a lease annexed to and made part of his petition, which lease plaintiff alleges was breached by the defendants' abandonment of the leased premises.

Defendants answered denying any indebtedness to plaintiff, with the exception of

$75 admitted to be due for the first fifteen days of January, 1928. They averred that on or about January 15, 1928, the leased premises were partially destroyed by fire, resulting in a damage so great as to necessitate their removal from the plaintiff's building. That on or about January 24, 1928, they notified plaintiff to this effect, informing him that the fire had rendered the leased premises unfit for occupancy and the continuance of their business therein and declaring the lease terminated. That, accordingly, they vacated the premises as they were entitled to do under the circumstances.

Defendants, in the alternative, alleged that plaintiff subsequent to their removal from his premises leased the same to one A. E. Gordon at a rental of $105 per month, payable monthly, and that, in any event, plaintiff is not entitled to a judgment against them in any greater sum than $45 per month, the difference between the monthly rental under said lease and the monthly rental of $150 stipulated in the lease contract herein sued on, and that plaintiff is estopped to claim any amount in excess thereof; which estoppel is specially pleaded. That as to the rentals not due the suit is premature, and, if not premature, that no judgment can be rendered against them unless "the same be payable monthly as the rentals accrue."

The case was tried on these issues and resulted in a judgment in favor of plaintiff against the defendants jointly for the full amount sued for, subject to being credited with any rentals received or to be received by plaintiff, and decreeing that the judgment for the rentals to become due should only become executory as the rentals became due in accordance with the provisions of the lease sued on. From this judgment, the defendants have appealed.

The facts, stated narratively, are: That in 1927 the defendants were operating a drug store in plaintiff's premises at No. 1920–22 Texas avenue in the city of Shreveport. Negotiations for the renewal of the existing lease among the parties were completed and reduced to writing on June 10, 1927. This was a five-year lease, which was to run from January 1, 1928, to January 1, 1934. The stipulated rental was $150 per month. Plaintiff's building is three stories in height and is constructed of brick. The fire referred to in defendants' answer occurred on January 15, 1928, which was fifteen days after the new lease had begun to run. At that time, the upper floors of plaintiff's building were used and operated as a hotel, and the ground floor of the building was occupied by a telegraph station, a shoe store, a barber shop, a jewelry store, the hotel lobby, and defendants' drug store. The portion of the building occupied by defendants' drug store was irregular in shape and was located in the west corner. Adjoining the drug store on the east side and separated from it by a plastered wall was the jewelry store. In the rear and northeast corner of the drug store were two adjoining compartments, one eight feet wide by ten feet deep, and the other eight feet wide by fourteen feet deep. These compartments were separated from each other and from the main portion of the store by 2x4 studding and shiplap, extending from the floor to the ceiling, a distance of twelve feet. A mezzanine floor separated the upper and lower portions of the compartments. The upper story of the smaller compartment was used as an office. The remaining space in the compartment and the entire other compartment were used for the compounding of prescriptions and for the storage of drugs. The main portion of the drug store contained the fixtures usually found and the merchandise usually handled in such establishments. The outer walls of the leased premises were constructed of brick, the floor was made of concrete, and the ceiling was made of metal.

On January 15, 1928, a fire occurred in the leased premises at about half past 1 o'clock in the morning. The fire originated in the compartments located in the rear and northeast corner of the drug store. The prompt appearance and action of the local fire department confined the flames within the area in which the fire originated. As a result of the fire, the frame partition was partially destroyed and the drugs in storage were almost completely destroyed. The main portion of the drug store was also damaged by the heat, smoke, water, and the exertions of the firemen. This damage occurred to the metal ceiling, screen doors, plate glass, and paint.

The defendants, while taking stock and adjusting their losses with the insurance companies, remained in possession of the premises, but without any attempt to continue their business, until January 24, 1928, when they removed to a vacant building which they had leased from one C. H. Luchini on June 2, 1927, a few days prior to the date on which they executed the lease herein sued on. The Luchini building is situated on Texas avenue about one block east of plaintiff's building. After some two or three days' delay, the defendants proceeded to carry on their business at their new location.

Plaintiff began to repair his building as soon as defendants would permit him to do so, which was on or about the day defendants left the building. These repairs could have been made at an expense of from $250 to $350, but due to the requirements of the building code of the city the expense was actually somewhat greater, namely, from $750 to $800. The entire frame construction of the com-

partments was removed and the 2x4 studding replaced by 4x4 material and the shiplap was replaced by metal lath and plaster. The plastered wall between the drug store and jewelry store, which was slightly cracked by the heat, was repaired, and about two and three quarter squares of metal ceiling which was damaged by the smoke and the heat was restored. Some plate glass and screen doors were replaced, and the entire interior of the premises was repainted. The work was completed in about six and one half days and a tender of the premises was then made to the defendants, by whom it was refused. Thereafter, plaintiff leased the premises to A. E. Gordon for five years at a monthly rental of $105, and notified defendants in writing to that effect and that he would expect them to pay him the rent then due and also $45 each month, the difference between the monthly rentals to the end of their lease contract. Later, the present suit was filed.

The court below found, in which finding from our examination of the record we agree, that a fair preponderance of the evidence established that the business of the defendants could have been conducted, although with some inconvenience to defendants, while the repairs were being made. That this could have been accomplished by the erection of scaffolds or a superstructure supported by uprights and covered by tarpaulins, which would have protected the drug store and the business conducted therein from the dust and débris incident to the work. That the work in question could have been done at night after business hours, and that it could have been completed in less than six and one half days if the necessity therefor had existed.

The defendants, in support of their contention that they were within their legal rights in electing to cancel the lease and abandon the premises, argue that their lessor was bound to maintain the premises in a condition to serve for the use for which they were leased. Civ. Code, art. 2692. That their lessor failed to discharge his obligation, since the premises were partially destroyed by fire, which rendered them unfit, or, at least impeded their use, for defendants' drug business. Hence defendants could either demand the diminution of the price or the revocation of the lease. Civ. Code, arts. 2697, 2699.

The codal articles to which the defendants refer are only a few of the interrelated provisions of the Code governing contracts of lease. Thus we find article 2700, which is relied on by plaintiff, reading as follows, viz.:

"If, during the continuance of the lease, the thing leased should be in want of repairs, and if those repairs can not be postponed until the expiration of the lease, the tenant must suffer such repairs to be made, whatever be the inconvenience he undergoes thereby, and though he be deprived either totally or in part of the use of the thing leased to him during the making of the repairs. But in case such repairs should continue for a longer time than one month, the price of the rent shall be lessened in proportion to the time during which the repairs have continued, and to the parts of the tenement of the use of which the lessee has thereby been deprived.

"And the whole of the rent shall be remitted, if the repairs have been of such nature as to oblige the tenant to leave the house or the room and to take another house, while that which he had leased was repairing."

And article 2717, which provides:

"The expenses of the repairs, which unforeseen events or decay may render necessary, must be supported by the lessor, though such repairs be of the nature of those which are usually done by the lessee."

■ The five codal articles we have mentioned, when construed together, clearly. imply that although the lessor is bound to maintain the leased premises in a usable condition, nevertheless, when by reason of an unforeseen event it becomes necessary to repair them the lease continues, unless the premises have become unfit for the lessee's purpose.

In Dussnau v. Generis, 6 La. Ann. 279, the court in adjudicating upon the right of a lessee to consider the lease dissolved and to abandon the leased premises because of the happening of an unforeseen event, used the following language in holding the lease in force, viz.:

"But a consideration of the provisions of our Civil Code on the subject of letting and hiring, with reference to their general spirit and intendment, leads us to the conclusion that the lawgiver did not contemplate the dissolution of leases, except in extreme cases, but rather an equitable indemnity to the tenant for a temporary inconvenience sustained unexpectedly and without the fault of the lessor. And in this respect it harmonizes with the spirit of the Roman law and that of France. Le fait de force majeure dont se plaint le preneur, says Troplong, doit lui occasioner un dommage grave. Si plus quam tolerable sit, disait le jurisconsulte Gaius; sans quoi une simple gene, un legere diminution des advantages du bail ne serait pas une cause de resiliation. It will be observed that in the present case the lessee was not deprived absolutely of the use of the premises. He was subjected to inconvenience, it is true; but the house was still habitable. Moreover, the inconvenience was not of such character as to menace discomfort during the entire term. It was temporary, and such as in the ordinary course of things must entirely disappear long before the expiration of the lease."

■

The cited case is only one of a number of cases establishing an unbroken jurisprudence to the effect that a lease is not dissolved where the leased premises are damaged by an unforeseen event (such as fire) necessitating merely repairs and not reconstruction, the lessee not being forced to vacate the premises during the period required for making the repairs. See Pontalba v. Domingon, 11 La. 192; Dussnau v. Generis, supra; Denman v. Lopez, 12 La. Ann. 824; Foucher v. Choppin, 17 La. Ann. 321; Penn v. Kearny, 21 La. Ann. 21; Murrell v. Jackson, 33 La. Ann. 1341; Vincent v. Frelich, 50 La. Ann. 378, 23 So. 373, 69 Am. St. Rep. 436.

In Vincent v. Frelich, supra, the thing leased consisted of two four-story brick stores connected by open arches in the dividing wall. The leased premises and the manufacturing plant of the lessee situated therein were damaged by fire. The roof and a portion of one of the buildings were destroyed and the other building was slightly injured. The cost of the repairs, which required seventeen days for their completion, was considerably less than the value of the buildings. The court declined to dissolve the lease, holding that partial destruction remedial by repairs not requiring reconstruction does not afford any ground for dissolving a lease.

Counsel for the defendants concede that the jurisprudence is as we have stated it to be, but they vigorously argue that the jurisprudence is based on an erroneous interpretation of the codal articles, which interpretation has been corrected by some of the later decisions. In support of their argument, counsel cite the cases of Henry Rose Mercantile & Manufacturing Co. v. Smith, 139 La. 217, 71 So. 487, and Dehan v. Youree, 161 La. 806, 109 So. 498. The leases in both these cases were annulled. But neither of the cases depart from the principles announced in the

earlier decisions. On the contrary, they are entirely in harmony with those decisions, presenting examples of the exceptional features referred to therein which authorize the abrogation of a lease contract. Thus, in the Rose Case the leased premises consisted of a three-story brick building fronting 70 feet on the street and extending 150 feet back to an alley. The building was divided into two parts by a fire wall. The front part was 100 feet deep and the rear part was 50 feet deep. The front part was used by the lessor in carrying on a wholesale fruit and produce business and contained a cold storage compartment. The back part was used by the lessor as a candy factory and bottling works and for the machinery used in operating his plant. This back part, together with all its contents, was destroyed by fire. The fire marshal ordered the demolition of the fire wall between the compartments because of its unsafe condition. The lessor informed the lessee of this order and notified him that he would not be responsible for any injury that might result from this dangerous situation. The next day the lessee terminated the lease and vacated the premises. The court held that under the circumstances he was justified in so doing. The court said, at page 226 of 139 La., 71 So. 487, 490, if it be conceded "that only in an extreme case can the lessee revoke the lease for partial destruction of the thing leased, the present case would have to be regarded as being of that character, since the partial destruction here is about as extensive as a destruction could well be without ceasing to be merely 'partial,' within the legal meaning of that word." In the Dehan Case the damage to the leased premises was caused by the lessors, themselves. The damage was of such magnitude that the building inspector of the city ordered the premises vacated until the front wall could be placed in a safe condition, and roped off the sidewalks to keep people from passing in front of the building which was leased for the purpose of conducting a restaurant. The work of repairing the front wall and rebuilding the side wall lasted about a month. When this work was completed, the lessors' agent notified the lessee the premises were ready for his occupancy. But at that time, the temporary shore wall inside the building, which covered one-fifth of the restaurant space, had not been removed and a glass on the inside which had been removed had not been replaced. The lessee declined to retake possession of the premises, under the lease, for the reason that the lessors by their unwarranted acts had put an end to the contract and had practically destroyed his business. This court held that the position of the lessee was correct, inasmuch, as he was forced to vacate the leased premises because the so-called repairs were, in fact, a reconstruction.

Counsel for defendants have also cited a number of other cases, many of which are referred to and analyzed in the Rose and Dehan Cases, as supporting their contentions; but in all these cases the lease contracts were abrogated because the so-called repairs to the leased premises amounted to a reconstruction.

Our conclusion is that the damage caused by the fire to the leased premises herein was nothing more than an injury requiring the necessary repairs as provided by Civ. Code, arts. 2717 and 2700, and not a partial destruction authorizing the abrogation of the lease as contemplated by Civ. Code, art. 2697.

On February 10, 1928, plaintiff addressed a letter to the defendants informing them that he had leased the premises to A. E. Gordon at the rate of $105 per month, and that he would expect them to pay him the difference between that rental and the rental expressed in their lease, or $45 per month. Defendants

pleaded that by reason of the letter, plaintiff was estopped from demanding judgment against them for more than $45 per month.

■ Plaintiff did not lease the premises to Gordon until defendants had abandoned them and after he had made due demand upon defendants. He took possession of the premises and leased them to Gordon as a negotiorum gestor for defendants and for the purpose of minimizing the damage. There is no reason in law or equity why the defendants, who by reason of their abandonment of plaintiff's premises without lawful cause are bound for the rent of the whole term, should not sustain the loss in the event of a default on the part of the new tenant.

■ There is no merit in the plea of estoppel, because it is neither alleged nor shown that plaintiff's letter misled the defendants to their injury or was prejudicial to them in any way. The letter was written only after defendants had abandoned plaintiff's building and for the purpose of notifying them that plaintiff had secured a new tenant in order to minimize the damage, and was holding them for the difference in rentals, specifying what that difference actually was.

For the reasons assigned, the judgment appealed from is affirmed.