## No. 13,265

## Orleans

---

## DI CARLO v. CAMPO

---

(February 16, 1931. Opinion and Decree.)
(March 2, 1931. Rehearing Refused.)

---

Charles J. Rivet, of New Orleans, attorney for plaintiff, appellant.

E. M. Stafford and Daniel Wendling, of New Orleans, attorneys for defendant, appellee.

WESTERFIELD, J. Plaintiff claims $200, with interest and attorney's fees, under a written lease and four certain rent notes of $50 each. Defendant admits the execution of the lease and notes, but, by way of special defense, alleges that "on June 3, 1929, the said premises so leased to this defendant to be used as a colored pool room, as stated in said lease, caught fire and were totally destroyed by fire and ceased to be fit for the purpose for which it was leased, by reason whereof said lease was at an end as of said date."

The following articles of the Civil Code are of interest here:

Article 2697. "If, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages."

Article 2700. "If, during the continuance of the lease, the thing leased should be in want of repairs, and if those repairs can not be postponed until the expiration of the lease, the tenant must suffer such repairs to be made, whatever be the inconvenience he undergoes thereby, and though he be deprived either totally or in part of the use of the thing leased to him during the making of the repairs. But in case such repairs should continue for a longer time than one month, the price of the rent shall be lessened in proportion to the time during which the repairs have continued, and to the parts of the tenement of the use of which the lessee has thereby been deprived.

"And the whole of the rent shall be remitted, if the repairs have been of such nature as to oblige the tenant to leave the house or the room and to take another house, while that which he had leased was repairing."

In the case of Vincent v. Frelich, 50 La. Ann. 378, 23 So. 373, 69 Am. St. Rep. 436, it was held that partial destruction, remediable by repairs, and which do not require reconstruction, will not give good ground to dissolve the lease. In that case, after referring to several of the French commentators, the court, on page 382 of 50 La. Ann., 23 So. 373, 375, says: .

"Marcade (volume 6, p. 450) thus expresses his views under similar articles of the Code to ours: 'When the fire of heaven, or any other unforeseen cause of destruction, strikes a building, three things are possible: It may be completely destroyed, it may be destroyed in part, or it may be only damaged. Without question, every demolishment is a destruction; and, if a violent blast of wind causes the fall of a chimney, it might be said that there is partial destruction of the house, the chimney being destroyed. But this reasoning is not exact, and when, as in the case supposed by M. Troplong, a gust of wind throws down the chimney, tears out the Persian blinds, or shatters the windows, or when unusually heavy snow weighs down the roof, it will not be said that for that reason the building is destroyed, even in part, but that it was damaged, and the work to be done, as relates to the whole building, will not constitute a reconstruction, even partial, but exclusively a repair. Damage to a building, different from partial destruction, gives to neither the lessor nor the lessee the right to terminate the lease.' "

In the very recent case of Bernstein v. Bauman et al., 170 La. 378, 127 So. 874, 876, the court quoted, from the early case of Dussnau v. Generis, 6 La. Ann. 279, the following: ·

"But a consideration of the provisions of our Civil Code on the subject of letting and hiring, with reference to their general spirit and intendment, leads us to the conclusion that the lawgiver did not contemplate the dissolution of leases, except in extreme cases, but rather an equitable indemnity to the tenant for a temporary inconvenience sustained unexpectedly and without the fault of the lessor. And in this respect it harmonizes with the spirit of the Roman law and that of France."

With the legal principles as established by the authorities to which we have referred in mind, we examine the facts in this case.

It appears that the leased premises were rented for the purpose of being used as a colored pool room, but that, as a matter of fact, there were living accommodations for the defendant's family. The fire, which occurred at about 2 o'clock in the morning of June 3d, did not damage the pool room, but caused considerable damage to other portions of the building, involving an expense for repairs of $1,100, and unquestionably caused the defendant and his family, who were living in the premises, considerable inconvenience. But most of the damage, according to the testimony, was to the exterior of the building. There was some fallen plaster, and a part of the roof was damaged, but we are unable to say from the record that the damage to the building was so extensive as to require reconstruction in whole or in part, or that the premises were rendered unfit for the use for which they were intended, which, as stated in the lease itself, was the operation of a negro pool room. While the defendant and his family were deprived of the living quarters, according to the record, for about seven or eight days, and were required to obtain lodging elsewhere, it does not appear that his pool room business suffered interruption during that time. In the case of Goldberg v. Porterie et al., 2 La. App. 645, it was said:

"It is not necessary for us to determine the precise length of time during which defendants were deprived by reason of unfitness, of the use of the premises. Were it even longer than five weeks this would not entitle them to an annulment if there

was not partial destruction as contemplated by Article 2697 but only necessity for repairs as covered by Article 2700 and Article 2717."

Our conclusion is that the defense has not been sustained, and that the plaintiff should have judgment as prayed for.

Consequently, for the reasons assigned, the judgment appealed from is reversed, and it is now ordered that Joseph Di Carlo, plaintiff herein, have judgment against Charles Campo, defendant, in the full sum of $200, with 8 per cent interest from June 1, 1929, until paid, and 10 per cent attorneys' fees and all costs.