44 So.2d 221 (1950)
LIRETTE
v.
SHARP et al.
No. 3189.
Court of Appeal of Louisiana, First Circuit.
January 31, 1950.
*222 A. Dcutsche O'Neal, Houma, for appellants.
Ellender & Wright, Houma, for appellee.
DORE, Judge.
This is a suit under a contract of lease. The plaintiff alleges that on January 6, 1948, under a written contract, he leased to Liberty Motors, a commercial partnership composed of J. W. Sharp, Jr., and Thomas F. Glover, certain premises owned by him and situated in the City of Houma, for a period of fifteen months beginning on January 1, 1948 and continuing to March 31, 1949, at a monthly rental of Two Hundred Twenty-five and no/100 ($225.00) Dollars, payable monthly, for the purpose of conducting an auto sales and repair business, a copy of the written contract of lease being attached and made a part of the petition. He further alleges that the rent on the premises leased has not been paid since December 1, 1948 and the said defendants removed their goods from the leased premises and abandoned said premises without lawful cause during the month of December, 1948, and have failed to surrender the keys of the premises. He seeks payment of rent for the four months from December 1, 1948 to March 31, 1949, at the monthly rate of $225.00, or a total of $900.00, for which amount he prays for judgment, with legal interest from date of judicial demand and for costs.
Defendants, in their answer, admit the execution of the lease; admit that the last four months of the lease period have not been paid; admit that they abandoned the leased premises during the latter part or November or the first days of December, 1948, but deny that their abandonment of the leased premises was without legal cause; and they admit that they have not surrendered any keys of the premises to the plaintiff, because there were no keys to surrender. They deny any indebtedness to plaintiff for any sum of money.
Further answering and assuming the position of plaintiffs in reconvention, they aver that "before, during, at and after the time of the execution of the lease, * *, all parties were aware of the fact that the contemplated and later leased premises was not fit to be used for the defendants' business, due to the decayed, rotten and worn out condition of the roof and ceilingsall parties knowing that large leaks occurred and tremendous amounts of water poured through the roof of said building during rains to such an extent that practically the entire premises would be unusable during rain." They further aver that they, during their tenure of the premises, repeatedly and at divers times notified the plaintiff of the condition of the roof and constantly pleaded with the plaintiff to repair said roof, and he, the plaintiff, would promise to make the necessary repairs, but would fail to do so. Defendants aver that they, in an effort to get along peacefully in their business operations, "played along" with plaintiff as long as they could possibly do so, and finally abandoned the hope of having plaintiff *223 properly fix the roof, and did, during the latter days of November, 1948, begin to evacuate the building after having remonstrated with plaintiff and advising him that they could not stand the situation any longer.
Defendants claim the sum of $60 as damage done to an automobile by having tar leak upon it through the roof.
In addition to this $60, they claim damages in the sum of not less than Fifteen Hundred ($1500.00) Dollars for "loss of time, loss of labor, loss of work, loss of jobs, and were considerably annoyed and harassed by the condition of the roof, and by plaintiff's failure to put same in good condition as required by his obligation to defendants as lessor."
In their prayer, defendants pray for a dismissal of plaintiff's demand, for a cancellation of the lease as of the end of November, 1948, because of the defective condition of the roof, and for a judgment in their favor and against plaintiff for the sum of $1560, with legal interest from judicial demand until paid, and for all costs.
On these issues the case was duly tried, resulting in a judgment, with written reasons assigned, in favor of the plaintiff and against the defendants for the sum of $900, with legal interest from judicial demand; judgment in reconvention in favor of defendants and against plaintiff in the sum of $60.00, with interest from judicial demand; the costs were equally divided between plaintiffs and defendants. Defendants have appealed.
Revised Civil Code Article 2692, provides that, "The lessor is bound from the very nature of the contract, and without any clause to that effect: 1. * * *. 2. To maintain the thing in a condition such as to serve for the use for which it is hired. 3. * * *."
The following facts seem not to be disputed. The leased premises in the contract of lease is declared to be "That portion of that certain commercial building located at the corner of Lafayette and School Streets, (situated in the City of Houma), and bearing the municipal No. 301 Lafayette, on the first floor and consisting of the Filling or Service Station and Repair Department, as formerly occupied and used by said lessor." According to "Exhibit P-9," and as found by the trial judge, the structure leased measures 70 feet by 130 feet, a total area of 9100 square feet, less a portion reserved by plaintiff for a grocery store involving an area of something less than 2000 square feet, thus making a net area of more than 7000 square feet. Defendants admit that these premises were "hired" for the purpose of conducting an automobile repair, sales and filling station business, and according to their testimony, the premises were used for such purposes. It was this "use" for which the lessor, plaintiff, had to maintain the roof of the structure in a satisfactory condition. It should be mentioned at this time that the Lirette Grocery Store, operated by plaintiff's son, occupied part of the same structure and was covered by the same roof.
The record further discloses that the defendants occupied these premises, on a month to month basis at a monthly rental of $225 per month, in the early part of October, 1947, and were so occupying the premises when, on January 6, 1948, they executed the written lease for a term of fifteen months at the monthly rental of $225. The defendants abandoned the premises on or about December 14, 1948, without paying or offering to pay the December rent or any portion thereof, and without notifying the plaintiff of their intention in so doing.
The finding of fact by the trial judge is as follows: "The testimony shows that there were leaks from time to time during heavy rains, that Lirette was given notice of such leaks, that he made efforts to repair the same, but that the leaks were never so completely repaired as to completely prevent their recurrence during heavy rains. However, the testimony does not show (not even the testimony of Liberty's witnesses) that `tremendous amounts of water poured through the roof of said building during rains to such an extent that practically the entire premises would be unusable during rain'. On the contrary, our appraisal of the testimony is that the leaks consisted more of drips under *224 which buckets were hung, and which evidently served the purpose until repairs were made. If the leaks had been so extensive that `Tremendous amounts of water poured through the roof', the use of some two or three buckets would have been an absurd, vain and useless gesture. The fact that buckets were used indicates to us that the leakage could not have been nearly so extensive as Liberty alleges. Consequently, it is our belief that while there were some leaks which afforded Liberty some inconvenience and even resulted in some damage, they were hardly sufficient to impair the use of most of the premises and to justify the abandonment thereof."
We do not deem it necessary to state the testimony of each witness. We find it sufficient to say that after a careful reading of the transcript of testimony consisting of some 150 pages, we are in entire accord with the trial judge's conclusion of facts. Furthermore, we must say that the testimony justifies the further finding that the leaks, in comparison to the area of the roof, were not as extensive as the defendants would want us to conclude, but were occasional drips.
The first question presented for our consideration, under the facts and circumstances as found by the trial judge and us, is whether the defendants had a right to consider the lease dissolved and abandon the premises in the beginning of December, 1948.
It is fundamental that under Revised Civil Code Articles 2692, 2693, and 2729, it is the duty of a lessor to maintain in repairs the roof in condition such as to serve for the use for which the structure has been leased during the continuance of the lease, and in the event that the lessor neglects to fulfill this duty, then the lessee may ask for a dissolution of the lease or may himself cause the repairs to be made and deduct the price from the rent due on proving that the repairs were indispensable and that the price which he has paid was just and reasonable.
However, under our jurisprudence the dissolution of leases is granted only in extreme cases such as was done in the case of Goldstein v. Stone, 12 La.App. 702, 127 So. 73. In that case, a dwelling house was involved. The roof leaked very badly causing the premises to be uninhabitable and damaging the lessee's furniture. In fact, the plaintiff, lessor, admitted that the roof leaked, ignored the demand of the lessee to repair the roof, and contended that it was the duty of the lessee, defendant, as a matter of law under the provisions of Revised Civil Code Article 2694, to repair the roof and deduct the cost thereof from the rent.
In the present case, the structure leased was a filling station and garage. Defendants, lessees, were not deprived absolutely of the use of the premises. They were subjected to inconveniences at times, it is true; but, the structure was still being used. The plaintiff made repeated attempts in stopping and did stop the leaks upon being advised of the leaks. The defendants abandoned the leased premises without sufficient and legal cause and thereby became legally liable for the remainder of lease rent. We see no use of discussing the question raised as to whether defendants retained possession of the premises by not delivering the keys and in keeping an old damaged automotive vehicle and a stove on the premises. If they abandoned the lease without legal cause, they owe the four months' rent sued for.
The next question presented is the contention of the defendants that it was the duty or obligation of the plaintiff to rent the premises in mitigation of the damages or loss of rent. They contend that the plaintiff could have rented the structure for as much or more than defendants had obligated themselves to pay if plaintiff had stopped the leaks and desired to lease the premises, thus saving the loss of any rentals for the unexpired term.
We are free to confess that we know of no law which makes it the duty of the lessor to minimize the damages by endeavoring to obtain a new tenant in the event of an abandonment of the premises by the original tenant. It is true that in the case of Lagonda Corporation v. *225 Cancasci, La.App., 4 So.2d 775, 777, Court of Appeal, Orleans, we find: "It is pointed out that the plaintiff was under an obligation to minimize his damages and that in renting the property to a second tenant, he was discharging that obligation. It is true that a landlord is legally obligated to minimize his damages by endeavoring to obtain a new tenant in the event of a default by the original tenant. Bernstein v. Bauman et al., supra (170 La. 378, 127 So. 874, 877); Sliman v. Fish, supra (177 La. 38, 147 So. [493], 495)."
A study of this case clearly shows that such a pronouncement or holding is but an obiter dictum on the Court's part. The question presented on the answer to the appeal was the effect of voluntary remission, or waiver, without any equivocation, reservation, or qualification by the lessor of the balance of the rent, for which a new tenant had obligated himself. Further, the two cases cited by the Court do not support such pronouncement or holding.
In the Bernstein case, syllabus 3 states [170 La. 378, 127 So. 874]: "Lessees, having abandoned premises without justification, held liable for rent during term, notwithstanding landlord after abandonment re-leased premises."
This syllabus is fully borne out by the expression of the Supreme Court, viz.: "Plaintiff did not lease the premises to Gordon until defendants had abandoned them and after he had made due demand upon defendants. He took possession of the premises and leased them to Gordon as a negotiorum gestor for defendants and for the purpose of minimizing the damage. There is no reason in law or equity why the defendants, who by reason of their abandonment of plaintiff's premises without lawful cause are bound for the rent of the whole term, should not sustain the loss in the event of a default on the part of the new tenant." (Italics ours).
The Sliman case is authority for the rules that (1) "The abandonment by defendant of the leased premises had the result of maturing the whole amount of the rent under the lease. Hyman v. Hibernia Bank & Trust Co., 144 La. 1074, 81 So. 718," [177 La. 38, 144 So. 494] and (2) "Where the lessee abandons the premises, the lessor may rent the property to other tenants, and does not thereby cancel the lease, or impair his recourse upon the lessee. He is, however, equitably bound to credit the lessee for the amount he received from the new tenants. Holden v. Tanner, 6 La.Ann. 74."
These cases therefore are authority for the rule that when the lessee abandons the leased premises without justification, such abandonment matures the whole amount of the rent under the lease and the lessor, acting as negotiorum gestor for defendant, may lease the premises to another tenant without impairing his recourse against the lessee, provided however, that if he so acts, the lessee is entitled to credit for the rent received. There is nothing in these cases which hold that there is any legal duty on the lessor's part to act as a negotiorum gestor for defendant. He has the discretion of demanding his whole rent or may act as a negotiorum gestor for the defendant and re-lease the premises for the benefit of the lessee. In our case, the lessor chose to claim the whole rent. It appears to us that it was more the duty of the defendants to sublease the premises than the plaintiff.
In their brief defendants also cite the case of Weil v. Segura, 178 La. 421, 151 So. 639, as sustaining their contention. We do not find wherein that case is authority for their contention; to the contrary, we find that it is wholly in accord with the holdings of the Bernstein and Sliman cases, supra.
We now pass to the reconventional demand of the defendants-appellants.
In so far as the $60 damages allowed by the trial court is concerned, we are not concerned with it in that the plaintiff has not appealed nor has he answered the appeal.
The defendants complain that they should have been permitted to prove further damages and that the case should be remanded for further hearing and the introduction of evidence. Their complaint is based on the ruling of the trial judge, on *226 objection of counsel for plaintiff, excluding evidence on the reconventional demand of $1500, as the allegation with reference thereto was too vague, too general and indefinite to warrant such introduction of evidence.
The allegations of defendants' reconventional demand are as follows:
"17. Defendants consequently suffered loss of time, loss of labor, loss of work, loss of jobs, and were considerably annoyed and harassed by the condition of the roof and by plaintiff's failure to put same in good condition as required by his obligation to defendants as lessor."
"18. Defendants aver that in addition to the particular Sixty Dollars item hereinabove referred to, they have suffered injury and damage because of the conditions and circumstances above recited in the sum of not less than Fifteen Hundred ($1500.00) Dollars."
The defendants in their brief admit these allegations do not set out their claims in detail but contend that they are sufficient to advise the plaintiff as to what the damages consist of so that he may be prepared to meet the issue. With him, we must disagree. In our opinion, the trial judge properly excluded evidence as to such claims, as a mere reading of these allegations shows that they are so vague, so general and indefinite that plaintiff was placed in a position in which it could not defend itself against such claims. For instance, how did the defendants lose any time, any labor, and what jobs did they lose, and for what amount? It was the duty of the defendants, in their reconventional demand with reference to these alleged items of damages, to set out clearly how they were incurred and the amount claimed as they did for the sixty dollars claimed.
The defendants also complain of the ruling of the trial judge in barring evidence relative to some photographs and evidence relating thereto sought to be introduced on surrebuttal. Without passing on the correctness thereof, we find that this evidence would not change the conclusions we have reached.
Finding no error committed by the trial judge in his finding of fact and the law applicable there, the judgment appealed is affirmed.
Judge ROBERT D. JONES, sitting ad hoc.