<div style="text-align: right; font-variant: small-caps;">NICHOLSON<br>v.<br>OGDEN.</div>

missions are allowed by law, and who lost them by an absence which was for his own convenience and over which the heirs had no control, and for which they should not suffer.

It is the duty of courts to see, and the right of heirs to demand, that the execution of wills should be promptly performed. The will of the testator, as to the executorship should be obeyed, but only when it can be done without delay to the heirs and legatees. The office of executor is but auxiliary to the great object of settling and distributing the estate.

We are not prepared to hold, with the counsel of plaintiff, in the opinion formed upon authorities at common law, that the executor has a vested interest in the estate of the testator from his death. Our impression is, that even at common law, the rights of the executor commence with the acceptance of the trust, and that if from any cause the executor is not qualified, the courts in England would give the administration of the estate with the will annexed to an administrator, as our courts do to a dative executor. Be that as it may, the duties of an executor commence under our laws from the time of his appointment by the court, and his being qualified by taking his oath; and the law then allows him two and a half per cent commissions on the value of the estate, he having the seizin thereof, for his trouble and care; and we may add the responsibility of his trust. Code 1676.

It is desirable that the office of executor should not be considered one of great profit, and the commissions should be but an equivalent for onerous duties. Testator's should bestow their liberality by direct donations, and not indirectly, so as to produce the impression that considerable sums are allowed by law or courts, as commissions under the pretence of onerous duties which are not onerous, or are never performed.

′ The whole merits of which the case is susceptible, is presented by the exceptions of the defendants ; and we think the judgment of the district court should be affirmed, with costs.

<div style="text-align: right;">6   487<br>46 1173</div>

## CHARLES CAFFIN v. CLAUDIUS REDON.

The lessee cannot claim a dissolution of a lease on account of the repairs which may become necessary. C. C. 2670. He can only claim a reduction of the rent. But if the work to be done is a re-construction of a part of the building, rendered necessary by an original defect, the lessor's implied warranty is violated, and the lessee has the right to demand the dissolution of the lease. C. C. 2665.

Where a building was in danger of falling down, in consequence of the original defectiveness of the pillars which supported it, the remedying of this defect is not a repair, but a re-construction in legal contemplation.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Janin* and *Taylor*, for plaintiff. *C. Roselius* and *L. C.* and *G. B. Duncan*, for defendant. The judgment of the court was pronounced by

ROST, J. The plaintiff claims $291 66, the amount of one month's rents of a tenement leased by him to the defendant for a term of years, three of which were unexpired at the time; and further alleging that the defendant was about to leave the premises, and that he was liable for the rent until the expiration of the lease. He obtained a provisional seizure of the merchandise in the store for the sum of $10,791 66.

CAFFIN
*v.*
REDON.

The defendant admitted his indebtedness to the plaintiff for one month's rent, tendered the amount, and, on the refusal of the plaintiffs to receive it, deposited it in court. Assuming, then, the character of plaintiff in reconvention, he denied any further indebtedness or liability to the plaintiff, and prayed for the dissolution of the lease, on the ground that there were inherent defects and vices in the construction of the building, which rendered it dangerous to tenants and passengers, and unfit for the use he had intended to make of it.

In his answer to the demand in reconvention, the plaintiff admitted that the rented premises stood in need of repairs; but further averred that the repairs had been begun, and the building would soon be put in perfect condition; that he had informed the defendant that he was ready to indemnify him for any loss he might sustain in consequence of the making of those repairs; and that he had no right to claim a dissolution of the lease.

There was judgment in favor of the defendant that the lease be dissolved; and the court, considering the real tender and deposit of the amount of rent due, adjudged the plaintiff to pay costs. He has appealed.

The question upon which this case turns, is, whether the changes which the plaintiff made in the building were repairs, in contemplation of the parties to the lease, or re-constructions rendered necessary by inherent defects of the building? If they were repairs, the case must be governed by art. 2670 of the Code. The defendant must suffer them to be made, whatever be the inconvenience he undergoes thereby, and although he may be temporarily deprived of the use of the building. He is entitled in such a case to a remission of the rent, but has no action for the dissolution of the lease. If, on the other hand, the work done was a re-construction of a part of the building, rendered necessary by a defect in the original construction, there is a breach of the lessor's implied warranty, that the thing leased was free from any vices and defects which might prevent its being used; and even if it should appear that the lessor knew nothing of those vices and defects, or that they have arisen since the lease was made, provided they did not arise from the fault of the lessee, the defendant is entitled to a resolution of the lease. C. C. Art. 2665.

Repairs and re-constructions run so closely into each other that there is some difficulty in drawing the line which separates them. Work which would be repairs in an old building may be re-constructions in a building of recent date; and the succession of time, or the act of God, may render repairs necessary which would cause greater inconvenience to the lessee than any re-construction rendered necessary by original defects. The right to have the lease dissolved does not depend upon the degree of inconvenience to which the lessee is put. If the thing leased does not fulfill his object in consequence of some inherent defect the action *ex conducto* will lie, although the inconvenience resulting from the defect may be too light to authorize a claim for damages. Troplong du Louage, vol. 2, p 6.

The action *ex conducto* is a redhibitory action, based on the vices and defects of the thing leased, and the warranty of the lessor that it would be free from them. The only thing to be ascertained is, whether there were vices and defects in the leased premises which rendered them unsafe and unfit for the use which the defendant intended to make of them. We think, with the district judge, that the testimony upon this fact is conclusive. The house had been built little more than two years, when the city surveyor considered it his duty to inform the mayor, in writing, that the construction of it was defective, the brick pillars of the wall fronting on Customhouse street being too light, cracked and out of

plumb, as well as the walls above them; and to advise that immediate action be taken to prevent the fall of the entire building. On receipt of this letter, the mayor appointed a committee of architects and civil engineers, who, after a minute examination of the premises reported, that the pillars fronting on Customhouse street were built with country brick of inferior quality, and could not bear the pressure of the upper stories; that the bricks in the pillars were not properly tied, in consequence of which several of the pillars were cracked; that the lintel over the pillars was of wood and not as thick as the wall, in consequence of which the front part of the wall had nothing to rest upon.

On the faith of this report, the mayor ordered the plaintiff to prop the house, to take down the brick pillars and wooden lintels, and replace them with granite or iron. The plaintiff obeyed the order without remonstrance. His compliance with it can be viewed in no other light than as an admission on his part that the changes ordered to be made were rendered necessary by defects in the original construction of the building. The fact that the building was originally defective is proved beyond all doubt, even by the plaintiff's own witnesses. It is shown, that the sub-tenants of the defendant left it on account of its dangerous condition; that the apprehensions of danger were such as to prevent persons from going into the store, or even passing on that side of the street; and that the danger became imminent in the business season of the year. It is clear, that the defendant could no longer apply the rented premises to the use he intended when he agreed to pay so high a rent, and that his attempt to continue in them must have been followed with heavy losses, and perhaps entire ruin. It appears to us impossible to suggest a case which would come within the provisions of art. 2665 more clearly than the present. The fact shown by the evidence, that the necessary changes have been made, and that the building is now free from defects, cannot impair the rights of the defendant arising from the original defects of construction which made those changes necessary. The taking out of the brick pillars and wooden lintels, and replacing them with granite, was, in legal intendment, a re-construction, and not a repair of that part of the building. The inherent defect which made that re-construction necessary, entitles the defendant to a dissolution of the lease.

The judgment is therefore affirmed, with costs.