BREAUX, T.
Plaintiffs, who were defendant’s lessees, sue to recover damages from the defendant in the sum of $13,455,00, being the alleged difference between the contract rental price and actual rental value of the building’íór 103V> months on the ground that he (the defendant), without right so to do, put an end to the contract of lease under which they held.
The lease in question was for five years, with the privilege of renewing it at the expiration of the lease for another five years. About a year after the contract of lease had been entered into, the building leased caught fire.
The preponderance of the testimony shows that the whole of the upper story was destroyed, including all the woodwork in this building, and also the roof. The lower floor was damaged, and the ceiling scorched in places by falling brands and cinders, and was stained with smoke.
The testimony shows that, as to the brick wall, the defendant stipulated with the contractor who reinstated the building to have the top of the front wall taken down “to bottom line of smoked brick, and rebuilt with new-faced brick, cleaning off the stone by chiseling or otherwise, and replacing them in the wall as before.” Prom all of the facts, we infer that the whole building was badly damaged, and some parts of it were entirely destroyed. The plaintiffs admit that it was not tenantable.
The plaintiffs, because of the damage to the building by fire, were placed under the necessity of removing their stock. It also was very much damaged by fire.
Some time afterward, when the roof had been replaced and other work had been done on the building, plaintiffs sought to move their stock back into the building. They were prevented by defendant from returning to their place of business before the fire.
Plaintiffs allege that the building is worth $130 per month more than the contract price, and that at the time they were forcibly evicted there remained 100J4 months of unexpired lease.
The defendant defends the suit, as set out in his answer, by averring that the lease was destroyed by fire by reason of the damaged and untenantable condition of the building; and further that, if the lease was not canceled as alleged after the fire, plaintiffs, having moved out of the building and given up the keys to defendant, are estopped from denying that the lease was annulled; and lastly, if plaintiffs had any right of action, it was for possession of the building, and not for damages.
The case was tried by jury. Verdict was found against the plaintiffs, and from this judgment they appeal.
We will take up the issues in the inverse order in which they have been alleged and pressed upon. our consideration in argument of counsel. The action is exclusively for damages. Defendant chose to regard the lease as at an end.
The day after the fire, plaintiffs removed their stock in trade into another building, at some distance. They do not appear to have stood upon any legal right, but removed as just stated. They gave up the keys. It is true that something was said about the necessity of returning these keys in order to enable the defendant to keep the doors closed whilst working on the building. None the less, it does not appear, even if the statement italicized were uncontradicted, that they (the keys) were returned by plaintiffs as if they were concerned about their lease, or desired to claim any right under its terms; but the plaintiffs are contradicted, and testimony was heard that went to prove that the keys were delivered unconditionally, and that plaintiffs abandoned the lease.
The parties met and talked over the situation a short time after the fire, and nothing shows any inclination on the part of plaintiffs to retain as lessees.
Defendant testified that plaintiffs said in one of their talks together that, if they could not get the building on the same terms and price as before, they did not want it, in a manner to lead defendant to infer, he says, that they acknowledged that the lease was at an end, and that a few moments afterward one of the plaintiffs directed one of his employes (May) to give the keys to defendant, and that the keys were then delivered.
*233 Plaintiffs, without making the least claim, paid their rent up to the date of the fire; accepting thereby the date of the fire as the time to which they should pay. No reference was made at the time of payment to any possible future rental.
As relates to the keys, defendant is corroborated by the testimony of May. The jury and the judge, who saw and heard these witnesses, accepted the defendant’s corroborated statement, to the extent before mentioned, as correct. No reason has been urged, sufficient, as we think, to sustain the conclusion that they have erred.
The circumstances of the case accepted bv the court and jury as correct were sufficient to lead the defendant to fairly infer that plaintiffs did not consider themselves as tenants at the time that the talks were had, as before mentioned. It was only about three weeks after the fire that plaintiffs commenced to lay claim to the lease.
About a month after the fire, plaintiffs sought to regain the possession abandoned, by returning some of their stock to the building. The work on the building had not yet been completed, and it was yet in possession of the builder. They were frustrated in the attempt to regain possession, and by it gained nothing in a legal point of view. The attempt to thus return was made in the nighttime, without notice to the defendant or to the builder, who was still in possession, rebuilding the destroyed parts of the construction.
We pass to the question of damages claimed by plaintiffs.
We have seen that they consist of prospective rentals; that is. of an amount which plaintiffs claim over and above the rental under the contract.
Every one knows that rental depends upon many contingencies, and is subject to many changes as 'to value. The profit now may be considerably less in the course of a year.
We have seen, plaintiffs claim this increase on rent for ten years. They have leased the property with the privilege of renewing at the end of five years.
If we were to recognize the validity of the whole of this claim, we would have to assume that they will renew their lease at the end of the five years. This we must decline to do, as there is no certainty that plaintiffs will renew their lease. This point was directly decided in Tulane Educational Fund Case, 49 La. Ann. 1029, 22 South. 96.
Besides, years ago this court had occasion to decide against speculative profits as a basis for judgment. “The person is not always liable for the profits which another might have made if the contract had been executed according to its terms.” Guerrier v. Lambeth, 9 La. 341.
This court said, in substance, with reference to article 1934, Rev. Civ. Code: “The decisions based on that article have invariably placed a strict interpretation on its provisions, * * * disallowing speculative profits, confining-tliem to the immediate and direct consequence of the breach of contract.”
Citing a number of decisions, again the court approvingly quotes from 3 Pars. Cont. p. 281, the following: “The future profits of a business which has been interrupted are open to the objection of remoteness as well as of uncertainty.”
At least, part of the damages fall within the domain of the speculative and remote. The court does not rest its conclusion or decree entirely upon this ground.
We pass to the next ground, growing out of the alleged destruction of the building.
As relates to the fact of dissolution of the lease or the end of the lease, there can be no question. Both parties. agree that the lease is dissolved, and the only issue remaining is whether the defendant, in acting as he has, rendered himself liable in damages or not. The testimony shows that the cost of reconstruction made amounted to more than one-half the value of the building, and yet it would have required an additional sum, ranging in the estimate of witnesses from $1,000 to $2,500, to restore the building to the condition in which it was before the fire. There are cracks and fissures in the walls rendering reconstruction necessary, as we take it.
Pour experts, experienced and trustworthy builders and constructors (two of the number had examined the building after the fire, and fixed the amount of the loss to be paid by the insurance company), testified, in substance, that the building was reconstructed.
The plaintiff had no right to compel the *235 owner to reconstruct the building, that had been virtually destroyed, as a store.
“The lessee cannot compel the lessor to reconstruct that which has been destroyed by a fortuitous event.” Laurent, vol. 25, p. 449.
“It is generally considered that, in the event of partial destruction by a fortuitous cause, the lessee cannot compel the lessor to reconstruct the building.” Fuzier Hermann, vol. 4, p. 289, No. 159.
“The lessee can in case of partial destruction demand that the lease be considered at an end, but, the lessee cannot compel the lessor to rebuild the portion destroyed.” Again, “The lessee may insist that the repairs be made to the building by the lessor to the extent that the building is damaged and not destroyed.” Fuzier Hermann, vol. 4, p. 279 et seq.
Here the lessees did not at first call on the lessor to repair the building, and, in the second place, it was pretty well understood at first by all parties, as we take it, that the building had to he reconstructed.
If the chimneys only in this case had been destroyed, and the windows, or other similar parts of the structure, it would he different. They would fall within the definition of repairs. But here we have seen that the whole roof was destroyed, and other important and indispensable parts of the building, rendering it absolutely untenantable without reconstruction.
The destruction of the roof and other parts of the building was virtually equal to a total loss.
“As to whether the building was repaired or reconstructed is a question to be decided by the court with the assistance of the judgment of experts.” Laurent, vol. 25, p. 120.
The court considers, with the assistance of the testimony of experts, that the building required reconstruction.
It follows that as the court could not, under law and jurisprudence, order the lessor to reconstruct the building, from the moment it became evident that reconstruction was necessary the lease was at an end.
For these reasons, the verdict and judgment appealed from are affirmed.
NIOHOLLS, O. J., and MONROE, BLANCHARD, and PROVOSTY, JJ., concur in the decree.