Defendant leased from plaintiff, for a term of four years, beginning February 20, 1940, a brick store building in the town of Rodessa, Caddo Parish, Louisiana. The monthly rental was fixed in the written lease at $100, payable in advance on the 20th day of each month. Defendant subleased the building to another who thereafter conducted a retail grocery business therein.
On March 29, 1943, a destructive fire of unknown origin occurred in the building. The fire inflicted great damage to the merchandise therein and to the building, as will be hereinafter set forth.
Plaintiff owned another store building adjoining the leased one, that was vacant when the fire occurred. He tendered this building to the subtenant free of rent, in which to conduct its business, evidently on the assumption that the damaged building could soon be rebuilt and that the subtenant would resume business therein. Plaintiff's offer was accepted and the salvaged goods placed therein. These were disposed of by May 4th. On this date the subtenant quit business. Also, on this date, plaintiff instituted suit against defendant in Sabine Parish, to recover rent for the unexpired term of the lease, being eleven months. By agreement this suit was dismissed and the present suit was filed on May 26, 1943, on the same cause of action.
The lease contract contains an accelerating clause to the effect that when and if rent for two consecutive months was not paid when due, at the option of the lessor, the unmatured payments should become immediately due and payable. Plaintiff availed himself of this stipulation.
Plaintiff also alleges that a fire in the building occurred as above stated, but that the damages therefrom could have been repaired in two or three weeks had not defendant by retaining possession of the wrecked building prevented him doing so.
Defendant resisted the suit on the ground that the building was in legal contemplation totally destroyed by fire that carried with it a dissolution of the lease which absolved defendant from liability for rent thereafter. He avers that on March 29th he informed plaintiff that because of the destruction of the building the lease agreement was at an end. He further denies that by any act or deed he prevented plaintiff from promptly reconstructing the building.
The court maintained defendant's contention that the building was totally destroyed by the fire and refused plaintiff judgment *Page 886 
save for $33.35, the amount of rent due from March 20th to March 29th. Defendant was cast for this amount and for costs of suit. Plaintiff only appealed. Defendant has not answered the appeal.
The leased building had a street front of 20 feet and extended back between parallel brick walls 105 feet. The roof was flat and consisted of some sort of mineral roofing, with lumber base. Each end was enclosed. The front portion of the building consisted of a door or doors, with glass display windows. The rear enclosure was made up of windows, doors and framework.
The fire originated in the rear of the building or near the center thereof. Before it was extinguished the entire roof, save a small section at its front end, was consumed as well as the rear enclosure and all interior supports, partitions, etc. The windows and doors of the front end were broken in, badly damaged by smoke and water. The floor, being of wood, was not entirely destroyed. The burned and charred roof and supporting timbers fell upon the floor, merchandise and fixtures, which augmented by water from the fire engines, created what is termed by the witnesses as "an awful mess". The two walls did not fall but were cracked and were otherwise damaged. Each had to be replastered.
Plaintiff, in the face of these undisputed facts, contends that the building was not destroyed and argues that a repair job only was necessary to restore its former good condition.
Plaintiff's position is not tenable. The facts clearly warrant the conclusion that the building was totally destroyed within the meaning of the law governing such cases. This law is found in Article 2697 of the Civil Code, which in part reads as follows:
"If, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end."
The Supreme Court, construing this article and applying it to the facts in Meyer v. Henderson et al., 49 La.Ann. 1547-1549, 16 So. 729, 730, said:
"The partial destruction of the building leased by plaintiffs from defendants made it entirely unfit for the purposes for which it was leased. It was a wreck. It was not habitable. It was unfit for the storage of goods and merchandise. The necessary repairs to it required some months for their completion.
"If these facts alone were presented, the plaintiffs would be entitled to a decree annulling the lease."
In the present case the building after the fire was a complete wreck; it was uninhabitable. Part of the subtenant's merchandise was destroyed and the remainder badly damaged. Another building had to be procured to effect a program of salvage. Reconstruction work was begun the latter part of May and was not completed until the last of September or the first of October following.
Corroborative of the conclusion that the building was totally destroyed, are these admitted facts: The building was insured for $3,000, the insurer, on the basis that the loss was total, paid to plaintiff the face amount of the policy.
Plaintiff cites and relies largely upon the following cases, to-wit: Rose Mercantile Mfg. Co., Ltd., v. Smith, 139 La. 217, 71 So. 487; Goldberg v. Porterie et al., 2 La.App. 645.
We think these cases do not afford plaintiff much comfort. It was specifically held in the first cited case [139 La. 217, 71 So. 490] that:
"If the premises have ceased to be fit for the use for which they were leased, and the work of restoration amounts to reconstruction and not to mere repairs, the lessee is entitled to revoke the lease * * *."
It appears from the opinion in that case that the lessee after a destructive fire in the leased building, for that reason, gave the lessor notice he had revoked the lease. The court said that since this had been done:
"* * * we do not think that its having consulted its convenience to some extent in vacating, and delayed a few days or weeks longer than was absolutely necessary for doing so, has changed the legal situation. The continued occupation was by mere sufferance."
It is argued in the present case that it was defendant's duty to have notified plaintiff of his purpose to revoke the lease. As stated heretofore, defendant alleged that he did so, and so testified. We think such a notice is not required. The article of the Code, quoted from above, makes no mention thereof. *Page 887 
The law positively declares that if the thing leased is destroyed by an unforeseen event while the lease is in effect, "the lease is at an end." Language could not be clearer. No act or deed on the part of the lessee is required to effectuate this result. The result is definitely superinduced by the facts. The obligations of lessor and lessee, in such circumstances, terminate upon the happening of unforeseen events that work destruction of the object of their contract.
The facts of the Goldberg case clearly differentiate it from the case at bar. It is not applicable.
The lower court specifically held that plaintiff was not prevented from reconstructing the building earlier than he did because of defendant's possession thereof. The building, after the fire, as described above, was open at each end with the roof off. After the sublessee removed its damaged stock therefrom nothing remained therein save some fixtures, so badly damaged as to be virtually worthless. These were given away by the sublessee's manager. Nothing prevented plaintiff from taking possession of the wrecked premises as soon as the sublessee moved its stock therefrom. He had the right to reconstruct the building and, necessarily, the right to take possession of the premises for that purpose.
We think the judgment appealed from is correct; it is hereby affirmed with costs.