FOURNET, Justice.
 

 -The Treigle Sash Factory, Inc., on June 30, 1942, by written contract leased to John J. Williams (whose real name was Anthony Saladino) its property located at Jackson and South Claiborne avenues in the City of New Orleans for use “as a commercial ‘Drive-In’ establishment for the sale of soft drinks, liquors, sandwiches, and the like,” for a term expiring on June 30,. 1945. However, on March-20, 1945, prior to the expiration date of the lease, the company executed another lease in favor of the lessee covering these same premises, this lease to begin at the termination of' the first lease and to end on June 30, 1948, with the privilege of renewal for two additional years. In the meanwhile, on April 16, 1945, the building on the premises was partially destroyed and otherwise damaged by a fire in which the lessee lost his life. Contending that this destruction rendered the building on the premises untenantablewithout reconstruction and that the lease-was, consequently, at an end, the lessor instituted proceedings on June 11, 1945, seeking to have the administratrix and one of the heirs of the lessee, a sister, Mrs. Marie Saladino Penny, enjoined from interfering with the plaintiff taking possession of the property. Contemporaneously, the lessor tendered and had deposited in the registry of the court pending the outcome of the matter the sum of $89.90, half of the rent for the month of April, 1945, the full amount for that month ($179.79) having been paid by the lessee prior to his death. Invoking the acceleration clause of the lease providing for the automatic maturing of all rents due for-the entire term of the
 
 *950
 
 lease in the event of the death of the lessee, the lessor, in the alternative, demanded that as a condition precedent to the administratrix and heir of the lessee exercising any rights or privileges under the lease that was to become effective on July 1, 1945, they be condemned’to pay the amount due under this clause, that is, $6,840, with 6% interest per annum from the date of the lessee’s death, April 16, 1945, plus 10% attorney fees and the cost of the suit. There are several other alternative demands that are relatively unimportant to a decision in this case.
 

 On July 9, 1945, the trial judge maintained the exceptions of no cause and no right of action filed by the defendants in response to the rule nisi and denied the preliminary injunction sought by the plaintiff. The plaintiff appealed devolutively from this judgment.
 

 On July 24, 1945, while the injunction proceeding was thus pending, in part on the merits and in part on appeal, the lessor proceeded by rule to eject the administratrix of the succession of the lessee on the ground that she had failed to pay the matured rent due under the acceleration clause in the lease that became effective on July 1, 1945, and had refused to vacate the premises in accordance with the demands made in the injunction proceedings, and by letter dated July 21, 1945. In the alternative, as the basis for the ejectment of the administratrix, the company alleged the lease was at an end because the building on the leased premises was so destroyed as the result of the fire that it was rendered untenantable without reconstruction.
 

 In response to the rule that issued in these proceedings the defendant pleaded (1) the former proceedings as lis pendens, (2) inconsistecy, repugnancy, and estoppel, also based on the former proceedings; (3) prematurity, because of lack of adequate notice to vacate; and (4) exceptions of no cause and no right of action. With reservation of her rights under these pleas and exceptions, the administratrix answered generally denying all of the allegations urged by the lessor in the main demand and setting up as a special defense that the lessor was- without legal right to demand payment of the accelerated rent under the lease for the term July 1, 1945-June 30, 1948, because the only lease affected by the death of the lessee was the one in existence at the time of his death (expiring on June 30, 1945) and the accelerated rent due under this lease had been tendered the lessor. It was her contention that the death of the lessee prior to the inception of the lease that was only to begin on July 1, 1945, could not have the effect of automatically accelerating the rent due under such lease and, in any event, that the lessor’s right under this clause is not the possession of the property but only damages in the form of the entire rent due under the lease. In answer to the lessor’s alternative demands, the defendant admitted a portion of the building had been destroyed by fire but
 
 *952
 
 denied that such fire had been sufficient to render the building untenantable without reconstruction. She contended that the lessor was without interest to complain, regardless, since under the terms of the lease the lessor was exempt from the obligation of repairing or restoring the improvements damaged by the fire.
 

 On the day of the trial of these proceedings, August 6, 1945, the trial judge announced he would have to dismiss the ejectment proceedings because of lack of proper notice to vacate, as required by law, but counsel for the defendant waived the requirement of proper notice and agreed to go to trial on the other exceptions. Being of the opinion that the pending proceedings had as their object the possession of the premises, which was also the ultimate object in the injunction proceedings, the trial judge then maintained the plea of lis pendens and dismissed the ejectment proceedings. The plaintiff appealed devolutively from this judgment.
 

 On September 6, 1945, the defendants in the injunction proceedings instituted June 11, 1945 (and while the matter was pending on the plaintiff’s appeal from the refusal to grant a preliminary injunction), filed their answer on the merits admitting the execution of the leases, the fire, that they were in possession of the premises under the leases, and that tender of the rent allegedly due had been made; in all other respects they denied the allegations of the petition. The case went to trial on December 3, 1945, evidence being heard on the 3rd, 4th, 5th, and 10th. The case was then submitted for decision. On March 29, 1946, the trial judge, assigning written reasons, concluded the leased premises had only been partially destroyed by fire and, therefore, that the lessor was without right to have the lease declared at an end under the provisions of Article 2697 of the Revised Civil Code. He consequently denied the plaintiff’s right to a permanent injunction on its main demand and, accordingly, rendered judgment (which he signed on April 16, 1946) returning to the lessor the half month’s rent tendered by it as a refund and in the plaintiff’s ' favor for the rent that had been tendered to it and returned covering May and June of 1945, the last two months under the old lease. On the plaintiff’s alternative demand the court rendered judgment against the defendants for $6,840, with interest at 6% per annum from April 16, 1945, until paid, plus 10% attorney fees on the principal and interest, and costs of the suit. He also denied the several alternative demands of the plaintiff but he did reserve to the plaintiff its right to assert its lien and privilege on the premises as the lessor.
 

 The plaintiff and the administratrix of the lessee’s succession both appealed from this judgment, the former suspensively and the latter devolutively. The sister of the deceased, who was made a party in the injunction proceedings, did not appeal.
 

 The proceedings as drawn up are very complicated and confusing and seem to pre
 
 *954
 
 sent novel questions. Actually, however, when boiled down, they present only three simple propositions for our decision. (1) Was the lease at an end because of the fire of April 16, 1945, within the meaning and contemplation of Article 2697 of the Revised Civil Code? (2) Was the plaintiff entitled to a judgment under its alternative demand in the suit filed on June 11, 1945, for the entire rent provided for in the lease of July 1, 1945, under the acceleration clause thereof? (3) The correctness vel non of the judgment dismissing the ejectment proceedings.
 

 Under the express provisions of the Revised Civil Code “The lessor is bound from the very nature of the contract, and without any clause to that effect: 1. To deliver the thing leased to the lessee. 2. To maintain the thing in a condition such as to serve for the use for which it is hired. 3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.” Article 2692. But, “If, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed m part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages.” Article 2697.
 

 Obviously, the provisions of Article 2697 are to relieve the lessor of the obligation placed on him under the second provision in Article 2692 when the leased property is totally destroyed, and to release him of his obligation under the third provision if the property is taken for a purpose of public necessity. But when the building is only partially destroyed, it is the lessee (and not the lessor) who is given the right to demand a revocation of the lease or a diminution of the rental price, at his option, under Article 2697.
 

 Counsel for the lessor contend, however, that Article 2697 must be read ,in connection with Article 615, 2130, and 2728 of the Revised Civil Code and that when these articles are considered together the conclusion is inescapable that the lease of property damaged by a fortuitous event continues only when the property can be restored to its original condition by mere repair, as contradistinguished from reconstruction, the lease in the latter case being at an end by operation of law.
 

 All of the cases decided under Article 2697 and related articles have involved the right of the lessee to have the lease revoked because of the untenantable condition of the building. While it is true that in many of these cases the court, in determining whether or not the building had become untenantable because of damages arising from the occurrence of some unforeseen event, drew a distinction between property that is merely damaged to the extent of requiring repairs only, making it possible for the lessee to remain on the premises though with some inconvenience (in which case the court refused to terminate the lease),
 
 *956
 
 and those cases where the leased premises were partially destroyed or so damaged as to require reconstruction, as contradistinguished from mere repairs, seriously affecting the lessee’s possession (in which case the court terminated the lease), the right of revocation under Article 2697 is, nevertheless, one granted exclusively to the lessee and not to the lessor.
 

 An examination of the facts in this ■case, in the light of the jurisprudence, particularly since the lessee here is not demanding a cancellation of the lease but is, ■on the contrary, resisting all efforts on the part of the lessor to have the lessee ejected from the premises, leads us to the conclusion, as it did the trial judge, that the plaintiff is not entitled to a cancellation of the lease under the provisions of the article.
 

 The evidence of the several experts who testified as to the condition of the building shows that while a portion of it (particularly that part referred to as the “camel-back,” in the -upper portion of which the lessee constructed living quarters for himself for his own convenience) was totally destroyed, the greater portion of the remainder of the building was only damaged, in some parts only slightly. We think the preponderance of the evidence in this respect establishes the fact that the building can be restored and put in as good condition as it was immediately prior to the fire for prices ranging from $6,500 down to $3,600, whereas the building is estimated to have been worth between $12,000 .and $15,000.
 

 Having reached this conclusion, it is obvious that the lessor, at the time the injunction proceedings were filed, was not entitled to the possession of the property and the injunction proceedings must, of necessity, fall. y
 

 The alternative demand of the lessor in the injunction proceedings filed on June 11, 1945 — that as a condition precedent to the administratrix and the sister of the lessee exercising any rights or privileges under the lease that was to become effective on July 1, 1945, they be condemned to pay the amount due under the acceleration clause for the matured rent for the entire term of the lease, plus interest and attorney fees — states neither a cause nor a right of action in our opinion. Simply stated the plaintiff’s demand in this respect amounts to nothing more than a request that the court render a declaratory judgment with reference to a lease that is only to come into effect at a future date. It therefore follows that the plaintiff was not entitled to have a judgment rendered to which it was not entitled under the pleadings and the trial judge’s judgment in favor of the plaintiff in the -sum of $6,840, plus interest, attorney fees, and costs, is erroneous.
 

 We now pass to the question of the validity of the judgment of the trial court maintaining the plea of lis pendens and dismissing the ejectment procedings.
 

 It is provided in Article 94 of the Code of Practice that “The same cause can not
 
 *958
 
 be brought before the same or separate courts * * * except by discontinuing the suit first brought before the answer is filed. The judge before whom the action is first brought shall sustain his jurisdiction, and the defendant shall be entitled to have the cause dismissed in the other suit * * * and to recover costs.” See also Par. 2 of art. 335.
 

 We think the cause in the main demand in the first suit and in the alternative demand in the second suit is the same .and that to this extent the plea of lis pen-dens is good. However, while it may be said that the primary object of both suits is the termination of the lease and the possession of the property, the causes in the two suits are different. In the so-called injunction proceedings the primary cause was based on the alleged destruction of the property by fire, the injunctive relief being only incidental thereto, while the cause in the second suit is the failure to pay the rent in accordance with the terms of the lease. Consequently, to that extent the trial judge’s judgment is erroneous.
 

 Since the question of the trial judge’s ruling in this respect is the only matter that is before us in the ejectment proceedings, the trial judge not having received any of the other pleadings, we are without authority to pass upon any of these other pleadings and the case must, therefore, be remanded to the lower court for the trial judge’s further action.
 

 ■ For the reasons assigned the judgment of the lower court signed on August 9, 1945, maintaining the plea of lis pendens and dismissing the rule of the plaintiff, Treigle Sash Factory, Inc., to eject-the defendant, Teresa Saladino, administratrix of the Succession of Anthony J. Saladino, is reversed in so far as the main demand is concerned and to that extent it is overruled and the case is remanded to the district court for further proceedings according t<5 law and consistent with the views herein expressed, all costs of this appeal to be borne -by the defendant-appellee, all other costs to await the final determination of this, suit. The judgment of the lower court signed on April 16, 1946, in so far as it awards to the plaintiff the sum of $6,840, with interest at 6% per annum from July 1, 1945, until paid, and 10% attorney fees on the said principal and interest and for all costs, is annulled and set aside; in all other respects it is affirmed and the plaintiff’s suit is dismissed, at its cost.