JANVIER, Judge.
Plaintiff lessor brought this rule for possession of a building located at 7000 West-bank Expressway, Marrero, Louisiana, and to order Defendant lessee partnership to vacate the premises.
On February 8, 1963, the Defendant entered into a lease agreement with Philip Paul Balestra who then owned the premises. On November 1, 1963, Plaintiff purchased this property from Mr. Balestra. On September 9, 1965, Hurricane Betsy caused extensive damage to the property, shortly after which Plaintiff commenced - repairing the building with the object of permitting Defendant to regain possession for the operation of its furniture business. However, on October 26, 1965, approximately seven weeks after the .hurricane, Plaintiff notified Defendant by letter that' it must vacate the premises, contending that the lease was at an end. Defendant, on the other hand, took the position that the lessor had no right to cancel the lease. • ';
Plaintiff subsequently brought this rule and Defendant answered, making Mr. Ba-lestra a third-party Defendant, praying that he indemnify Defendant for any damages it might sustain. The lower court dismissed the rule and Plaintiff took this, appeal.
Plaintiff contends that because of the following clause contained therein, the lease was automatically terminated:
“Should the property be destroyed or materially damaged so as to render it wholly unfit for occupancy by fire or other unforseen [sic] event not due to any^ fault or neglect of lessee, then lessee shall be entitled to a credit for the unexpired term of the lease and any un-matured rent notes shall be cancelled.”
ITowever, the trial judge concluded this provision gave the lessee the exclusive right to cancel the lease. In his reasons for judgment he stated:
“ * * * [T]his clause gives the lessee only, and not the lessor, the right or option to claim a credit for the unexpired term of the lease and to cancel unexpired rent notes, which, the Court concludes, means to cancel the unexpired portion of the lease since there are no rent notes. No where in the lease is the lessor given the right or option to cancel the lease in such event, and if the lessee chooses not to exercise his right to cancel, he cannot be forced to vacate and lessor is not entitled to possession of the premises.”
*300 We agree with this interpretation of the clause in question. It provides the lessee shall he entitled to a credit for the unexpired term of the lease and thus has the right to terminate the lease. In Corpus Juris Secundum the words “entitle” and “entitled” are defined as follows :
“ENTITLE: The word connotes the granting of a privilege or right to be exercised at the option of the party for whose benefit the word is used, * * * ”
“ENTITLED: * * * It signifies a claim of right — the right to demand or receive.” 30 C.J.S. pp. 720-721.
That the word “entitled” implies a choice is' also stated in 14A Words and Phrases, p. 391.
With respect to the lease agreement, it is also noteworthy that immediately after the hurricane both the lessor and the lessee, by their actions, indicated that the lessee was entitled to regain the premises; the rent being suspended during the interim when repairs and reconstruction were in progress. The lessee stood ready to replace the glass that was destroyed, an obligation it assumed in the lease, and to take possession of the premises when the repairs were completed. The lessor, on the other hand, admitted he was reconstructing the building with the intention that the lessee would repossess it until he read the aforementioned clause which he concluded gave him the right to cancel the lease.
In this regard, the trial judge said in his reasons for judgment:
“The Court also feels that this decision, besides being the best strictly legal interpretation of the disputed clause, is also the most just decision in the light of the circumstances * * * the lessor has already completed a large part of the repair or reconstruction work. The lessee stands ready and willing to replace the plate glass and repair his part of the damage. To allow the lessor to cancel the lease on the basis of a clause in the lease which does not specifically grant him such a privilege, would be to put the lessee out of business on a very dubious basis.”
We conclude, as did the trial judge, that the right to cancel the lease under the clause in question was one granted solely to the lessee and cannot be employed by the lessor to gain possession of the premises.
We must, therefore, look to the Civil Code and to the jurisprudence to determine whether, under the facts of this particular case, the lessor has the right to cancel the lease. The controlling article is LSA-C.C. art. 2697 which provides:
“If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages.”
Before applying the above cited article, it must be determined whether the premises were totally or partially destroyed. There is no doubt there was considerable damage, including almost complete demolition of one of the walls, breakage of all glass windows, destruction of one-third of the roof, and of a 10X12 foot office within the building.
To estimate the percentage of damage, three witnesses were called: Mr. Peter Vicari, Mr. Thomas J. Ochello, and Mr. Sam Woods, Jr., all general contractors, the latter being a partner in the Defendant partnership. Mr. Vicari estimated the cost of repairs at $35,385.00; Mr. Ochello at $20,520.80; and Mr. Woods at $21,000. From the evidence, we conclude the building was worth approximately $63,000 or $6.00 a square foot and we are impressed as was the trial judge, by the fact that Plaintiff’s insurer allowed him $27,600 for repairs and that Plaintiff accepted this amount. Even adding the $2,880 estimated by Mr. Vicari for glass replacement, these *301 figures indicate that the building was slightly less than half demolished, which we consider a partial destruction.
We agree with the trial judge that the case of Treigle Sash Factory v. Saladino, 211 La. 945, 31 So.2d 172, is controlling here. There are three holdings in the cited case which are applicable in the instant case:
(1) Even substantial destruction can be considered partial destruction. It was estimated that the building in the cited case, prior to the fire, was worth from $12,000 to $15,000 whereas it would take from $3,600 to $6,500 to repair it, and this 30 to 43 percent destruction was held to be only partial;
(2) That where a building is only partially destroyed, under LSA-C.C. art. 2697 it is the lessee and not the lessor that is given the exclusive right to demand revocation of the lease; and
(3) When it is the lessor and not the lessee who is demanding cancellation of the lease, it is immaterial whether the premises must be merely repaired or reconstructed, the Court stating:
“All of the cases decided under Article 2697 and related articles have involved the right of the lessee to have the lease revoked because of the untenantable condition of the building. While it is true that in many of these cases the court, in determining whether or not the building had become untenantable because of damages arising from the occurrence of some unforeseen event, drew a distinction between property that is merely damaged to the extent of requiring repairs only, making it possible for the lessee to remain on the premises though with some inconvenience (in which case the court refused to terminate the lease), and those cases where the leased premises were partially destroyed or so damaged as to require reconstruction, as contradistin-guished from mere repairs, seriously affecting the lessee’s possession (in which case the court terminated the lease), the right of revocation under Article 2697 is, nevertheless, one granted exclusively to the lessee and not to the lessor.”
In summation, we agree with the trial judge that under the provision of the lease relied upon by Plaintiff, under LSA-C.C. art. 2697, and under Treigle Sash Factory v. Saladino, cited supra, it is the lessee in the instant case who is given the exclusive right to cancel the lease.
For the above reasons the judgment appealed from is affirmed; Plaintiff to pay all costs in both courts.
Judgment affirmed.