385 So.2d 886 (1980)
The BOSSIER CENTER, INC., Plaintiff-Appellant,
v.
PALAIS ROYAL, INC., Defendant-Appellee.
PALAIS ROYAL, INC., Plaintiff-Appellant,
v.
The BOSSIER CENTER, INC., Defendant-Appellee.
Nos. 14166, 14167.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1980.
*887 Cook, Clark, Egan, Yancey & King by Charles G. Tutt, Shreveport, for Bossier Center, Inc.
Wiener, Weiss, Madison & Howell by James R. Madison, Shreveport, for Palais Royal, Inc.
Before PRICE, JASPER E. JONES and FRED W. JONES, JJ.
JASPER E. JONES, Judge.
A violent tornado which struck Bossier City on December 3, 1978, is the underlying cause of these consolidated cases. The Bossier Center, Inc. (Center) leased premises in its shopping center to Palais Royal (Palais) whose clothing store was heavily damaged by the tornadic forces. Shortly after the tornado, Jay Kline, President of Palais Royal, informed the Center that Palais Royal would be vacating the premises because it elected to declare the lease to be null due to the extensive damage sustained by the leased premises in the tornado. Palais filed a declaratory judgment action seeking a determination that the lease was ended because of the damages done to the leased premises by the tornado. The Center filed a separate suit against Palais to accelerate the rental payments for the remaining years of the lease and for loss of revenue, future loss of revenue, merchants' dues, and damages to the leased premises caused by Palais while moving from the building. The cases were consolidated for trial.
The trial court held Palais did not have the right to cancel the lease because although the premises were seriously damaged, they were not partially destroyed. The trial court found Center was not entitled to accelerate the rent installments because *888 of its failure to repair the leased premises. It also held Center did not prove it was entitled to damages, either in the form of lost income or reimbursement for any alleged damage done to the premises. Both parties appeal.
On December 19, 1974 the Center leased 20,500 sq. ft. to Palais within its shopping center to be used as a men's, ladies', and children's ready-to-wear clothing store. The lease period was ten years. The Palais area was remodeled by the Center in preparation for occupancy by Palais at a cost of approximately $275,000. Palais then spent about $150,000 on decorative and merchandising fixtures.
Palais was severely damaged by the tornado. Part of the roof was blown off and other portions were so severely damaged that over 1/3 of the roof had to be replaced at a cost of almost $50,000. The wind and rain destroyed substantially all Palais' merchandise and stock. The floor was inundated and there was substantial evidence that all parquet wood flooring and carpeting would have to be replaced. The electrical system was heavily damaged and one electrical contractor would not guarantee the system unless he replaced all wiring and fixtures. The air conditioning units located on top of the building were heavily damaged. The ceiling tile and insulation were blown out or exposed to rain, humidity, and moisture. One witness testified that much of the interior sheet rock walls would have to be totally replaced because of water damage. The large sign in front of the store was razed by the tornadic gusts.
The issues on appeal are (1) did Palais establish the leased premises were partially destroyed and for that reason it was entitled to cancel the lease? (2) if the lease is not subject to cancellation is the Center required to repair the premises as a condition precedent to accelerating all unpaid rent? and (3) did Center prove it was entitled to recover damages from Palais?
LSA-C.C. art. 2697 provides:
"If, during the lease, the thing be totally destroyed by an unforseen [unforeseen] event, or it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages."
LSA-C.C. art. 2700 states:
"If, during the continuance of the lease, the thing leased should be in want of repairs, and if those repairs can not be postponed until the expiration of the lease, the tenant must suffer such repairs to be made, whatever be the inconvenience he undergoes thereby, and though he be deprived either totally or in part of the use of the thing leased to him during the making of the repairs. But in case such repairs should continue for a longer time than one month, the price of the rent shall be lessened in proportion to the time during which the repairs have continued, and to the parts of the tenement for the use of which the lessee has thereby been deprived.
And the whole of the rent shall be remitted, if the repairs have been of such nature as to oblige the tenant to leave the house or the room and to take another house, while that which he had leased was repairing."
A review of these two Articles establish that where partial reconstruction is required to the leased premises, the lease may be cancelled but if only repairs are necessary the lease may not be subject to cancellation. The lessee is given the exclusive right to cancel the lease if the premises are partially destroyed. See Chivleatto v. Family Furniture & Appliance Center, 196 So.2d 298 (La.App. 4th Cir. 1967).
The distinction to be drawn between a partial destruction requiring reconstruction and a mere damage requiring only repair has been considered many times in our jurisprudence in cases involving deterioration, fire, floods, and other cas fortuit. The jurisprudence allows expert testimony as to the extent of restoration (whether repairs or reconstruction is required) to help distinguish between injury and partial destruction. See XXX Tulane Law Review 474.
*889 The case law sets out other criteria to be used to determine whether a partial destruction or a mere injury has occurred, such as(1) length of time the repairs would take, (2) the partial or absolute deprivation of lessee's use of the premises, (3) the length of time lessee would be displaced, (4) damage done to the lessee's stock, goods and merchandise, (5) the amount paid by the insurer of the building to the insured (as compared with the value of the building prior to damage), (6) the cost of repairs to the premises (as compared with the total value of the pre-damaged premises), and (7) to what degree and which parts of the building are damaged. See Chivleatto, supra; Treigle Sash Factory v. Saladino, 211 La. 945, 31 So.2d 172 (1947); Meyer v. Henderson, 49 La.Ann. 1547, 16 So. 729 (1894); Bernstein v. Bauman, 170 La. 378, 127 So. 874 (1930); Caffin v. Redon, 6 La.Ann. 487 (1851); Brunies v. Police Jury of Parish of Jefferson, 237 La. 227, 110 So.2d 732 (1959); Vincent v. Frelich, 50 La.Ann. 378, 23 So. 373 (1898); Viterbo v. Friedlander, 120 U.S. 707, 30 L.Ed. 776, 7 S.Ct. 962 (1887); Jackson v. Doll, 109 La. 230, 33 So. 207 (1902); Goldberg v. Porterie, 2 La.App. 645 (2d Cir. 1925); Thomas v. Soodhalter, 19 So.2d 885 (La.App. 2d Cir. 1944).
All the cases cited turn on the individual facts and circumstances. They variously found partial destruction and terminated the lease or concluded only damage not amounting to a destruction had occurred and refused to end the lease, but all used one or more of the above criteria in making this determination.
In Meyer v. Henderson, supra, damage that was construed as partial destruction entitling a lessee to demand cancellation was described as follows:
"But when the partial destruction has been of such a nature as to menace discomfort to the tenant during the entire term; to cause the tenant to abandon the premises, in order that repairs may be made; when the premises are no longer suitable for the purposes for which they were leased,in such cases it is clear that the lease should be annulled. The partial destruction of the building leased by plaintiffs from defendants made it entirely unfit for the purposes for which it was leased. It was a wreck. It was not habitable. It was unfit for the storage of goods and merchandise. The necessary repairs to it required some months for their completion." Meyer, supra, 16 So. at 729-730.
The court here annulled the lease which had two years remaining of its term.
The Center offered testimony of numerous witnesses who qualified as experts in construction, all of whom minimized the effect of the tornado upon the leased premises. The purpose of this testimony was to establish there had been no partial destruction of the leased premises. This evidence was offered to establish only repairs were necessary for the restoration of the premises which Palais was required to endure under the provisions of LSA-C.C. art. 2700.
The testimony of the two architects offered by Palais and Center was inconclusive on the issue of repair versus reconstruction.
Pictures in evidence revealed a large hole in the roof (testified by one of Center's experts to be 750 sq. ft.) where the entire roof structure was blown away. Other pictures show large holes in the roof and extensive areas where only a few pieces of sheet iron across steel beams remain, the wind having removed the zonite and other material used in the construction of the roof. Pictures also establish extensive electrical conduit and light fixture damage. These photographs also reveal extensive air condition conduit damage and substantial destruction to interior ceilings. The testimony of Palais' witnesses, who included electrical, air conditioning, and acoustical tile contractors, further established the scope and extent of the damage. The preponderance of the evidence established almost total destruction to 1/3 of the roof, substantial damage to the floor, interior ceiling, walls, electrical and air conditioning system.
The totality of the damage ($200,000 plus) in relation to the value of the building *890 ($1,000,000 plus) shows 20% or more of this modern retail store was destroyed, exclusive of $150,000 interior decorating costs incorporated into the leased premises by Palais, all of which were destroyed. The leased structure and component parts of it essential to the operation of a modern clothing store were so extensively damaged that Palais would have been totally evicted from the premises for four to seven months while the necessary rebuilding of its store was being accomplished.
We conclude that because of the severity and nature of the damages, with the resulting total eviction of the premises for some months (because of the time required for restoration), a partial destruction of the leased premises has occurred. Partial reconstruction will be necessary within the contemplation of LSA-C.C. art. 2697 rather than only repairs which are referred to in LSA-C.C. art. 2700. This conclusion is not incompatible with the factual findings of the trial judge as reflected by the following quote from his reasons for judgment:
"There is no question but that the leased premise were severely damaged. Part of the roof was blown off and the wind and rain substantially ruined all the merchandise belonging to Palais Royal. Much of the floor was completely under water. Much of the ceiling tile was either blown out, displaced, or exposed to moisture. There was damage to the electrical system and the air conditioning units which were located on top of the building, a large display sign in front of the building was blown away. Substantial damage was done to the interior and cost of repair `approximately $150,000 to $250,000' and that the total value of the leased premises is approximately $1,125,000 ..
The evidence also shows that it will take approximately two to four months for the necessary repairs to be made to the lease premises and that another two to three months would be required by Palais Royal for repairs by its design specialist. Thus the premises would not be ready to use for several months."
The only error made by the trial judge was he concluded the building was structurally sound and he characterized the havoc wrought by the tornado as severe damage when he should have found it was partial destruction.
In the case of Caffin v. Redon and Brunies v. Police Jury of Parish of Jefferson, supra, substantial replacement of weight-bearing walls was construed to be reconstruction of "partially destroyed" leased premises within the contemplation of LSA-C.C. art. 2697. We find the roof of Palais analogous to the walls in those cases. It is the top of the four sides of a building and its function is no less important than is the purpose served by the walls. The roof is essential to the protection of all the interior of the building and no doubt the partial destruction of the roof of Palais subjected the interior of the building to the winds and rain of the tornado resulting in a substantial portion of the other damage described.
Palais is entitled to have the lease cancelled under the provisions of LSA-C.C. art. 2697 and therefore we find no need to decide its contention that it is entitled to have the lease cancelled under the provisions of LSA-C.C. art. 2699.[1]
Because the lease is a nullity due to Palais' election to terminate, the Center is not entitled to the acceleration of the unpaid rent installments.
The trial judge found that the Center failed to establish any of the damages sought by it and the evidence fully supports this factual determination.
The judgment appealed in Palais Royal, Inc. v. Bossier Center, Inc., No. 14,167, is REVERSED and we render judgment therein cancelling the lease.
*891 The judgment appealed in Bossier Center, Inc. v. Palais Royal, Inc., No. 14,166, rejecting plaintiff's demands for rent and damages is AFFIRMED.
All costs in these consolidated cases in the trial court and on appeal are assessed against Bossier Center, Inc.
NOTES
[1] LSA-C.C. art. 2699If, without any fault of the lessor, the thing cease to be fit for the purpose for which it was leased, or if the use be much impeded, as if a neighbor, by raising his walls shall intercept the light of a house leased, the lessee may, according to circumstances, obtain the annulment of the lease, but has no claim for indemnity.