NORRIS, Judge.
This is a suit for rental, mileage and damages to a truck that the plaintiff, Spearsville Timber Co., allegedly leased to the defendant, Manville Forest Products Corp. There were also two other defendants, Felix Haile, the person who drove and wrecked the leased truck, and Excel Insurance Company, Haile’s collision insurer. Mr. Haile never answered the petition and Spearsville did not pursue him. The trial court rendered a judgment in favor of Spearsville and against Manville who now appeals, asserting chiefly that there was no lease between it and Spearsville. The judgment also dismissed the claim against Excel, and this is not appealed. For the reasons expressed, we amend and affirm.
Felix Haile is a trucker in the logging and pulpwood business. He owns a truck. On February 8, 1980, he drove his truck into Manville’s Huttig, Arkansas yard to receive a load of logs. Manville’s crane, however, dropped the logs incorrectly and damaged the truck, rendering it inoperable. Haile called Mrs. Robinson, a claims adjuster for Manville’s liability insurer, Wausau Insurance Company. She apparently recognized Manville’s liability for damaging the truck. She told Haile to go find another one; Wausau would rent it for Haile to use, or pay the rental on it. Thus reassured, Haile began scouting for another truck. He met with limited success because no one was willing to rent a truck for use “in the woods.”
Finally he reached Mr. Bill Halley, owner of Spearsville. Mr. Halley had two suitable trucks not in use; he was willing to rent them, but had no idea what to charge. He talked to Mrs. Robinson, they did some research, and they settled on a rental of $75 a day plus $.18 a mile. These particular facts are very significant for two reasons. First, Haile played no part in negotiating the price or entering the contract. This supports the trial court’s finding that *1157 the contract was between Spearsville, as lessor, and Manville, as lessee, acting through its agent, Wausau. Second, Mr. Halley was obviously relying on the resources and ability to pay of Manville and Wausau, not of Haile, and thought he was leasing the truck to Manville. Mr. Halley commemorated the agreement in a letter to Mrs. Robinson. This letter, however, refers to “rental of the truck by Felix Haile,” and Manville contends this language shows that Haile was indeed the lessee.
Mr. Haile took possession of Spearsville’s truck and used it for about a month until March 7 when he skidded off the side of a wet road and into an eight-foot ditch. The truck was damaged and inoperable. Mr. Haile called Mrs. Robinson to report the accident. Mrs. Robinson told him to call his own insurance agent and to find another truck to rent since his own was still under repair. Mr. Haile was once again unable to find a truck, though; finally Mrs. Robinson wrote to Spearsville that Wausau would not be responsible for any further rental charges after March 31. This is significant because Manville argues on appeal that if it was indeed bound by a lease to Spearsville, then the lease terminated when this notice became effective.
Meanwhile, Spearsville’s truck was also out of commission and Haile could not find anyone to repair it without clear authority from an insurance company. Consequently Mr. Halley took the truck back to one of his other business concerns, Bill Halley Trucking, and repaired it there himself. The repairs cost $8,461.30 and were not completed until May 23, which the trial court reckoned to be the 100th day of the lease.[1] The truck had also been driven 2,928 miles. Thus Mr. Halley demanded damages as follows:
Truck repairs $ 8,461.30
Daily rental, 100 days at $75 7,500.00
Mileage, 2,928 miles at $.18 527.04
TOTAL $16,488.34
The trial court, in written reasons for judgment, granted Spearsville all the relief requested against Manville and dismissed the claim against Excel. The court reasoned that Wausau, as the agent of Man-ville, leased Spearsville’s truck for the use of Mr. Haile. The stipulation in favor of Mr. Haile was based on Manville’s liability obligation to provide him a truck as part of the damages sustained at the Huttig wood yard.
Manville contends that the true intent of the parties was for Haile to be the lessee and for Wausau simply to pay the rent. This interpretation of the facts is possible but it overlooks the relationships between the parties. Wausau was certainly not acting for itself; rather, it was fulfilling a contractual duty to its insured, Manville. Manville cannot tenably argue that it was not bound by the obligations its agent incurred; it surely reaped the benefit of the informal settlement with Haile. LSA-C.C. arts. 2985, 3021. By negotiating the lease, by being responsible for the rental, and by later attempting to terminate the agreement, Manville placed itself, through the agency of Wausau, in the posture of the lessee. LSA-C.C. art. 2674; Chambers v. Vega, 18 La.App. 736, 137 So. 879 (Orl. Cir.1931). Mrs. Robinson testified that she explained to Haile that Wausau would rent him a truck and pay for it. Exhibit D-4 authorizes this rental for Haile’s benefit. Haile, the alleged lessee, did not enter the negotiations; settlement on the thing and price was entirely between Mr. Halley for Spearsville and Mrs. Robinson for Manville. Thus the trial court was not clearly wrong in concluding that Spearsville and Manville were the parties to the lease. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Manville was discharging a legal duty to Haile by renting a truck for him to use. Haile was the beneficiary, not the lessee. See LSA-C.C. art. 1978;[2] Freed & Clesi v. D’Orsay, 6 Orl.App. 388 (1909).
*1158 Manville’s next argument is that even if there was a lease, the lease did not obligate Manville to indemnify the lessor for damages Haile might cause. This is correct; all the witnesses agreed there was no contractual provision for indemnity. However, the law generally imposes on the lessor the duty of making necessary repairs during the continuance of the lease. LSA-C.C. art. 2693. On the other hand, the lessee is bound at the termination of the lease to return the thing “in the same state” as it was when he received it, excepting ordinary wear and tear. LSA-C.C. arts. 2719, 2720[3]; Hislop Plumbing Co. v. Pogue-Atkins Inc., 283 So.2d 808 (La.App. 2d Cir.1973).
Manville points out that LSA-C.C. art. 2721 makes the lessee “only liable for the injuries and losses sustained through his own fault.” Thus Manville denies liability for Haile’s acts of negligence. We disagree. Article 2721 must be read in pari materia with its surrounding articles. Articles 2719 and 2720 make it clear that at the termination of the tease a lessee is not liable for “unavoidable accidents.” Events that are “unavoidable” are not the lessee’s fault and thus not his responsibility. A lessee may nevertheless be liable for the negligent acts of others, if they are members of his household or his sublessees. LSA-C.C. arts. 2722. A lessee may also be liable if the negligent party is his employee. Hislop Plumbing Co. v. Pogue-Atkins, supra.[4] Given the whole statutory scheme, article 2721 cannot be construed to absolve the lessee from responsibility for damages under these circumstances, where the damage is sustained by the negligence of one to whom the lessee entrusted the equipment. Consequently we affirm the trial court’s judgment assessing damages for repairs of the truck.
Since Manville concedes the mileage charge, the only remaining issue is the daily rental. Manville claims that it owes rent only until the lease terminated, not until the truck was returned to Spearsville repaired. Manville offers two dates of termination. First it contends the lease ended on March 7, when the accident rendered the truck inoperable. LSA-C.C. arts. 2697, 2728. These articles provide for termination only if the thing is destroyed; Spearsville's truck was not destroyed. It required substantial repairs but not replacement. The lease did not terminate then.
Manville next argues the lease ended when Wausau sent a notice to Spearsville, effective March 31. Wausau decided to terminate the payments when it learned that Mr. Haile was no longer driving any truck. Mr. Haile’s failure to drive was a legitimate reason for Wausau to want to cancel the lease. Furthermore, the lease was being reconducted on a daily basis and could have been canceled any day. LSA-C.C. art. 2684; also arts. 2688, 2689.
We are sensitive to the apparent inequity of allowing a lessee to wreck the leased vehicle and then cancel the lease, thus depriving the lessor of a rentable truck during repairs. This result, however, is not possible because when the wreck is the fault of the lessee or of someone for whom the lessee is. responsible, then the lessee is liable not only for damages to the leased thing but also for the lessor’s “loss *1159 es.” LSA-C.C. art. 2721. Lost rental during repair time is obviously a “loss” contemplated by this article. But neither the apparent inequity nor the improper result is present in the instant case. Spearsville, as lessor, had the duty to deliver a truck to the lessee and to maintain it in a serviceable condition. LSA-C.C. arts. 2692, 2693.[5] Thus it had to secure the repairs in good faith and in a manner as to mitigate the lessee’s losses. LSA-C.C. art. 1759; Bossier Center Inc. v. Palais Royal Inc., 385 So.2d 886 (La.App.2d Cir.1980), writ denied 390 So.2d 1343 (La.1980). Spearsville had the truck repaired in Mr. Halley’s own shop, consuming an amount of time we consider excessive. We think that when Wausau terminated the lease on March 31, an adequate time for repairs had elapsed. These considerations do not supersede the lessee’s right to terminate the lease at will; rather, they complement it. Manville is thus liable for lease payments from February 9 until March 31, or 52 days. We calculate Spearsville’s damages as follows:
Truck repairs $ 8,461.30
Daily rental, 52 days at $75 3,900.00
Mileage, 2,928 miles at $.18 527.04
TOTAL $12,888.04
The judgment is therefore amended to read as follows:
IT IS THEREFORE ORDERED, adjudged and decreed that there be judgment herein in favor of plaintiff, Spears-ville Timber Company, Inc., and against the defendant, MANVILLE FOREST PRODUCTS CORPORATION, in the full sum of Twelve Thousand, eight hundred, eighty-eight and .34/1.00 ($12,888.34) dollars, together with interest thereon at the legal rate from judicial demand until paid, and all costs of the trial court proceedings.
Costs of appeal are assessed equally between appellant and appellee.
AMENDED AND AFFIRMED.

. By our calculations, this was really the 105th day of the lease.

. LSA-C.C. art. 1978 provides in part:
A contracting party may stipulate a benefit for a third person called a third party beneficiary.

. Art. 2719. Return of things leased under inventory
If an inventory has been made of the premises in which the situation, at the time of the lease, has been stated, it shall be the duty of the lessee to deliver back everything in the same state in which it was when taken possession of by him, making, however, the necessary allowance for wear and tear and for unavoidable accidents.
Art. 2720. Return of things leased without inventory
If no inventory has been made, the lessee is presumed to have received the thing in good order, and he must return it in the same state, with the exceptions contained in the preceding article.

. Article 272 l's exclusion of liability for damages not sustained through his own fault is in this respect similar to the exclusion of LSA-C.C. art. 2320, third paragraph, which exempts employers from liability for their servants’ torts unless the employer "might have prevented the act which caused the damage.”

. Art. 2692. Obligations arising from nature of contract
The lessor is bound from the very nature of the contract, and without any clause to that effect:
1. To deliver the thing leased to the lessee.
2. To maintain the thing in a condition such as to serve for the use for which it is hired.
3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.
Art. 2693. Delivery and necessary repairs
The lessor is bound to deliver the thing in good condition, and free from any repairs. He ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary, except those which the tenant is bound to make, as hereafter directed.
[Underscored word has no counterpart in the French text.]